**Rose E. BROWN, Appellant**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services.**

No. 85–5803.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1986.

Decided June 20, 1986.

Gaines H. Cleveland, with whom E. Marie Wilson-Lindsay, Washington, D.C., was on brief, for appellant.

William J. O'Malley, Jr., Asst. U.S. Atty., Washington, D.C., for appellee. Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Michael J. Ryan and Claire M. Whitaker, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. James N. Owens, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellee.

Before MIKVA, STARR and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This is a Social Security disability case. The claimant, Rose E. Brown, appeals from a judgment dismissing her action for review of a decision by the Secretary of the Department of Health and Human Services denying her claim for both disability and supplemental security income benefits under the Social Security Act. After careful review, we conclude that the Secretary's decision was unsupported by substantial evidence.

## I

For twenty-six years, Mrs. Brown was continuously employed and served successively as a waitress, delicatessen worker, butcher, and cook. Now fifty-nine years of age, Mrs. Brown is considered under applicable regulations to be of "advanced age," 20 C.F.R. § 404.1563(d); her eleventh-grade education is classified as "limited." Id. § 404.1564(b)(3). In November 1980, while performing her duties as a cook at a local church, Mrs. Brown sustained a back injury. Unable to work, she sought treatment. She was hospitalized twice. At the time, her treating physicians diagnosed her injury as a lumbosacral strain. Over the next eighteen months, several x-rays and a spinal CAT scan were interpreted as revealing lumbar lordosis, scoliosis, possible disc herniation, disc space narrowing, and spinal stenosis. These findings were interpreted as indicating degenerative disc disease. In April 1982, her former physician, Dr. Fleming, reported to a workers compensation insurer that Mrs. Brown would be "left with a partial permanent disability," J.A. at 103, adding that she could "return to work now on a part-time basis to see if she [can] tolerate employment." Id.

In June 1982, the insurer engaged a consulting physician, Dr. Dorin, to examine Mrs. Brown. Dr. Dorin found that x-rays revealed disc space narrowing and sclerosis, which "could represent a discogenic disease or a low-grade infection." J.A. at 107. The consulting physician concluded, however, that Mrs. Brown was not permanently disabled as a result of the injury and should have been able to return to her duties as a cook. Id. In early 1983, Mrs. Brown's new treating physician, Dr. Jacques, increased the dosage of her prescribed painkiller. J.A. at 110. Following a neck injury suffered by Mrs. Brown in June 1983, further x-rays of the cervical region were interpreted as indicating scoliosis and degenerative arthritis. In October 1983, Dr. Jacques rendered a diagnosis of chronic low back pain, lumbosacral disc disease, spinal stenosis, scoliosis, and degenerative arthritis in the cervical region. J.A. at 196. His prognosis was that he did "not expect [a] complete cure. The disc disease itself is slowly progressive." J.A. at 197. While not recommending surgery, Dr. Jacques added that he expected "no significant improvement in the underlying

disease." *Id.* Importantly, Dr. Jacques recommended "no heavy lifting or strenuous physical activity." *Id.* at 196. He indicated that Mrs. Brown was unable to resume her duties as a cook due to the "heavy lifting and reaching" required, but that she could resume "non[-]physically strenuous duties." *Id.* at 197.[1]

Thus, over the three-year period since her first injury, Mrs. Brown had been diagnosed by several physicians as having chronic low back pain, lumbosacral disc disease, spinal stenosis, scoliosis, degenerative arthritis, neck pain, and hypertension. As of the time of this proceeding, she continued to receive biweekly outpatient treatment and was receiving various medications for back pain and hypertension.

In August 1982, Mrs. Brown applied for disability insurance benefits [2] under Title II and Supplemental Security Income benefits [3] under Title XVI of the Social Security Act. Her applications were denied the following month, and her request for reconsideration was denied in March 1983. Mrs. Brown requested *de novo* consideration of her claims before an administrative law judge. After a hearing in November 1983, the ALJ entered his written decision denying her claims for benefits. The ALJ found that Mrs. Brown was not "disabled" within the meaning of the Act because her impairments would not prevent her from performing her "past relevant work." This determination became the Secretary's final decision in June 1984 when the Appeals Council denied the request for formal review. In May 1985, the United States District Court for the District of Columbia, after consideration of cross-motions for judgment, affirmed the Secretary's decision without opinion. The appeal before us is but another step on the long road of disability determination.

## II

Like that of the District Court, our review is statutorily confined to determining whether the Secretary's decision that Mrs. Brown was not disabled is supported by substantial evidence in the record. If substantial evidence exists, then the Secretary's factfinding is conclusive. 42 U.S.C. § 405(g) (1985). In the classic formulation, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Our review in substantial-evidence cases calls for careful scrutiny of the entire record. *Dorsey v. Heckler,* 702 F.2d 597, 602 (5th Cir.1983).

The pivotal statutory term, "disability," is defined in pertinent part by the Act as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (1982). The Secretary has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520 (1983). A claimant may be found to be "not disabled" at any of the five stages of this review. First, an individual who is engaged in substantial gainful work is deemed to be not disabled, despite any medical evidence or other contraindications. *Id.* §§ 404.1520(b), 416.920(b). Second, an individual must have a severe "impairment" to be considered disabled. *Id.* §§ 404.1520(b), 416.920(c). Third, if an "impairment" suffered by an individual is one of the requisite duration and is listed in the Secretary's regulations, then the individual is considered disabled. *Id.* §§ 404.1520(d), 416.-

---

1. During this period, Mrs. Brown had also been treated for high blood pressure, which was controlled by medication; the frequent leg cramps which resulted from this treatment have been ameliorated with potassium supplements.

2. 42 U.S.C. § 423 (1982).

3. 42 U.S.C. § 1381 (1982).

920(d). Fourth, an individual who, though suffering from an "impairment," is capable of performing work that he or she has done in the past is deemed not to be disabled. *Id.* §§ 404.1520(e), 416.920(e).

During these first four steps, the claimant bears the burden of proof. At the fifth and final stage, the burden shifts to the Secretary to show that the individual, based upon his or her age, education, work experience, and residual functional capacity, is capable of performing gainful work. *Id.* §§ 404.1520(f), 416.920(f).

### III

■ In her appeal, Mrs. Brown presses two contentions: *first*, that the ALJ applied an improper standard of proof as to her claims of subjective pain in that he unduly emphasized the lack of objective medical evidence of pain; and, *second*, that his finding in the fourth step of the analysis as to her functional capacity to perform her past work was unsupported by substantial evidence.

With regard to the first contention, the standard for evaluating claims of subjective pain is clear.[4] The governing statute provides that:

> there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment ... which could reasonably be expected to produce the pain ... alleged.

42 U.S.C. § 423(d)(5)(A) (Supp. II 1984)[5]; *see* 20 C.F.R. §§ 404.1529, 416.929. Here, the ALJ expressly found that Mrs. Brown was afflicted with an underlying impairment, which he described as "severe." ALJ Decision at 4 (Feb. 1, 1984). The

statute also provides that, in evaluating the credibility of Mrs. Brown's claim of subjective pain, it is well within the ALJ's province to consider whatever medical evidence of pain or other symptoms exists, as well as Mrs. Brown's statements and those of her physicians "as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings [as to an underlying impairment]." 42 U.S.C. § 423(d)(5)(A).

In the case at hand, we are persuaded that the ALJ applied the proper legal standard. The record indicates that the ALJ did not conclude that a shortfall of objective evidence barred consideration of Mrs. Brown's subjective allegation of pain. Rather, in weighing the relevant indicia—the underlying impairment, the medical evidence of pain, Mrs. Brown's own statements, and the physician's reports—the ALJ came to the independent judgment that her subjective claims of intractable pain were not credible. ALJ Decision at 5. We cannot conclude, as appellant would have us do, that the ALJ either placed undue emphasis on a lack of objective medical proof of pain or simply ignored Mrs. Brown's testimony. While contradictory evidence may exist, such credibility determinations are for the factfinder who hears the testimony; on this record, we find no reason to disturb the ALJ's conclusion in this respect.

### IV

The ALJ concluded that Mrs. Brown, although afflicted with a severe impairment which caused her some pain, could nevertheless engage in some of her past occupa-

---

4. "Subjective pain" is simply a claimant's allegations of pain. Under the regulations, pain is a "symptom", 20 C.F.R. § 404.1529, which is, in turn, defined as a claimant's own description of his or her impairment, *id.* § 404.1528(a). In contrast, "signs" and "findings" are objectively determined abnormalities or phenomena which are shown by medically acceptable clinical diagnostic techniques, such as a physician's evaluations or x-ray and CAT scan studies. *Id.* § 404.1529. Although the statute requires such

objective medical evidence of an *underlying impairment which could cause such pain*, objective medical evidence of pain itself, such as muscle atrophy or weight loss, is not necessary. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

5. This standard is to be applied retroactively to all determinations made prior to January 1, 1987. Pub.L. 98–460, § 3(a)(3), 98 Stat. 1794, 1799 (1984).

tions. As a matter of law, and not surprisingly, the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). Thus, the ALJ's determination that Mrs. Brown was able to perform her past work despite some pain must be upheld if supported by substantial evidence. Viewing the record before us, however, we conclude that the ALJ's determination in this respect was not undergirded by the requisite evidence.

■ In reaching this conclusion, we pause first to observe the requirements imposed upon the ALJ in making these determinations. In evaluating a claimant's ability to perform "past relevant" work, the ALJ is obliged by the regulations to review the claimant's "residual functional capacity and the physical and mental demands of the work [the claimant has] done in the past." 20 C.F.R. §§ 404.1520(e), 416.920(e). This task requires a determination of the claimant's "residual functional capacity for work activity on a regular and continuing basis," which includes consideration of the claimant's "ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, handling and the evaluation of other physical functions." 20 C.F.R. §§ 404.1545(b), 416.945(b). This assessment is not in itself a determination of disability, but is rather a starting point for examining the claimant's vocational background in light of her residual functional capacity. *Id.* §§ 404.1545(a), 416.945(a). The ALJ is required to consider the cumulative effects of all the claimant's ailments and, if relevant, medications. *Narrol v. Heckler*, 727 F.2d 1303, 1307 (D.C.Cir.1984); *Diabo v. Secretary of Health, Education, & Welfare*, 627 F.2d 278, 282 (D.C.Cir.1980).

■ Next, the ALJ must examine "the physical and mental demands" of the claimant's past relevant work, 20 C.F.R. §§ 404.-1520(e), 416.920(e), which is the claimant's substantial gainful work experience for the prior fifteen years. *Id.* §§ 404.1565(a), 416.965(a). This assessment must include an examination of pertinent work activities, including the nature and exertional requirements of tasks performed, such as the amount of walking, standing, sitting, lifting, and carrying. *Narrol*, 727 F.2d at 1307; 20 C.F.R. §§ 404.1545(a), 404.1565, 416.945(a), 416.965; *see Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir.1981). Ultimately, the ALJ must measure the requirements of the past work against the present capabilities of the claimant. *Diabo*, 627 F.2d at 283.

■ In this case, the relevant past employment during the prescribed period was Mrs. Brown's work as a cook, butcher, and delicatessen worker. The ALJ credited the testimony of both the treating physician and the consulting physician as indicating that Mrs. Brown "should not engage in any work requiring strenuous activity or heavy lifting." ALJ Decision at 4. The ALJ also observed that the treating physician had ruled out the possibility that Mrs. Brown could return to her position as a cook because of the heavy lifting and reaching involved in that occupation. *Id.* Curiously, the ALJ then found that Mrs. Brown's only apparent "major limitation" was the avoidance of heavy lifting. *Id.* at 5. In so finding, he failed even to discuss the highly relevant and apparently uncontroverted evidence from both physicians which supported her claim that *strenuous activity* —not just heavy lifting—was also out of the question. The ALJ likewise failed to address the treating physician's statement that Mrs. Brown could not perform cook work because of the *reaching* involved.[6]

---

6. The Secretary suggests that the lack of such discussion by the ALJ should give us no pause because "[t]here is ... no explanation with regard to [the treating physician's] opinion on appellant's limitation in reaching." Brief at 21. This is scarcely a response to this clear omission, for the ALJ had a duty to probe all relevant evidence and to develop a proper record. *Narrol*, 727 F.2d at 1306; *Diabo*, 626 F.2d at 281–83. If the ALJ recognized a need for "material evidence" or documentation which was missing from the record, he could have requested Mrs. Brown to furnish that evidence. 20 C.F.R. § 404.944 (1983); *see Narrol*, 727 F.2d at

In addition, Mrs. Brown testified with regard to her functional abilities that she was advised not to lift or bend, Tr. at 9; she further stated that she could lift only eight pounds, Tr. at 17, could not bend, *id.* at 16, and could not stand or sit for more than fifteen or twenty minutes at a time. ALJ Decision at 3, Tr. at 16, 17–18. The ALJ's implicit rejection, without even a breath of explanation, of the very evidence on which he relied for his earlier conclusions violated the elementary requirement that ALJ's not only state their findings but explicate the reasons for their decision. *See* 5 U.S.C. § 557(c); 20 C.F.R. § 404.953(a). The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored. *Cotter v. Harris, supra,* 642 F.2d at 705. What is more, in determining Mrs. Brown's residual functional capacity, the ALJ offered no findings whatever as to what she *could* do; the extent of her ability to walk, stand, bend or reach is nowhere discussed, although such a determination is expressly required. *See* 20 C.F.R. § 404.-1545(b).[7]

The ALJ cited only Mrs. Brown's testimony in describing her former employment. He stated that the cook position required her to be "on her feet" all day and to lift ten- to fifteen-pound objects, ALJ Decision at 3, whereas both the butcher and delicatessen positions required standing all day but no heavy lifting. *Id.* Al-

though the ALJ expressed some doubt as to whether the lifting restriction indeed prevented Mrs. Brown from working as a cook, ALJ Decision at 4, he appears to have accepted this conclusion for purposes of his decision. Based upon Mrs. Brown's testimony, the ALJ found that her former work as a butcher and delicatessen worker involved no "heavy lifting," *id.* at 5, and concluded that her residual capacity permitted her to perform those jobs. *Id.*

In so concluding, the ALJ made no findings as to the "physical and mental demands" of this past work. To compound this shortcoming, the ALJ failed completely to explore Mrs. Brown's capacity *vel non* to perform those functions. As if more were needed, his conclusion appears to ignore the record evidence as to the nature of the tasks performed in the butcher and delicatessen jobs. We turn briefly to that evidence.

The vocational report indicated that Mrs. Brown's job as a cook involved lifting up to twenty pounds, walking six hours a day, standing three hours a day, occasional bending and constant reaching. J.A. at 90. The report stated that the butcher job required lifting ten to fifteen pounds, eight hours of walking and four hours of standing each day, and occasional bending and reaching. J.A. at 91. The delicatessen position, as described in the report, involved no heavy lifting, but entailed eight hours of walking and six hours of standing each

1307. Instead, he appears to have ignored altogether evidence of necessary restrictions upon Mrs. Brown's activities, save for heavy lifting.

7. The Secretary has contended that Mrs. Brown's residual functional capacity was consistent with the physical exertion requirements of "light work." *See* 20 C.F.R. § 404.1567(b). Since the butcher and delicatessen positions are classified as "light work," the Secretary concludes that Mrs. Brown may be deemed capable of performing them. Inasmuch as this analysis is nowhere to be found in the Secretary's decision, this *post-hoc* argument is precluded by the teaching of *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Quite aside from *Chenery's* bar, this analysis begs the question whether Mrs. Brown is indeed capable of "light work." As defined by the Secretary's

regulations, "light work" involves lifting up to twenty pounds and frequent carrying of up to ten pounds, *id.* § 505.1567(b), yet this is precisely what Drs. Dorin and Jaques reported that Mrs. Brown was not to do, ALJ Decision at 4. "Light work" also requires a "good deal of" walking or standing, or sitting most of the time with some arm and leg motion. *Id.* To be considered capable of light work, a claimant must be able to do "substantially all" of these activities. *Id.* Absent any findings as to Mrs. Brown's capacity to engage in these activities, it cannot so readily be concluded that she was indeed able to perform "light work." The lifting prohibition alone would appear at this stage of record development to remove her from that category altogether.

day, with constant bending and reaching. J.A. at 92.

Nothing in the ALJ's decision indicates whether he considered this evidence or, if he did, why he rejected it. On this record, we are persuaded that the ALJ's determination—albeit grudging in nature—that Mrs. Brown could not perform her cook duties because of the necessary heavy lifting is at war with his conclusion that she could work as a butcher. The ALJ cited Mrs. Brown's testimony that she lifted ten to fifteen pounds as a cook. When her treating physician restricted her work activities to those involving no heavy lifting, the physician was expressly referring to the lifting she did as a cook. Although Mrs. Brown testified that her butcher work involved "no heavy lifting," her vocational report states that that job entailed frequent lifting of ten- to fifteen-pound objects. Thus, the ALJ inexplicably found her incapable of working as a cook on account of the ten- to fifteen-pound lifting requirement in that capacity, yet capable of meeting the identical lifting requirement as a butcher.

Even more important, the ALJ's decision acknowledged the uncontradicted evidence that Mrs. Brown could not engage in strenuous activities or reaching. The ALJ, however, made no findings as to the extent of the physical demands (other than lifting) imposed by the butcher and delicatessen jobs. Both jobs, according to record evidence, required Mrs. Brown to be on her feet constantly. Her delicatessen work also required constant bending and reaching, far more than that demanded by her work as a cook. The ALJ merely asserted in conclusory fashion that Mrs. Brown could satisfy all exertional requirements of these former jobs; absent any discussion of what those requirements were, and given the flatly contrary evidence in the record as to the nature of those requirements, such an *ex cathedra* pronouncement cannot fairly be said to enjoy the requisite support in the record.

We recognize that the ALJ had before him conflicting evaluations of Mrs. Brown's limitations. Dr. Dorin, at one extreme, had concluded that Mrs. Brown had no permanent limitations and could return to work as a cook. Dr. Jacques' evaluation, rendered a year later, was that Mrs. Brown could no longer work as a cook and should avoid heavy lifting and strenuous physical activity. The ALJ is certainly entitled to weigh conflicting opinions and to make his own assessment of their credibility. We merely hold here that that determination must be made within and according to the governing regulations.

## IV

The absence of findings on the crucial issues of the requirements entailed in Mrs. Brown's prior employment and her ability to engage in the full range of activities demanded by those jobs gravely undermines the ALJ's decision, depriving it of the necessary substantial record support. We are left with no choice but to remand this case to the District Court with instructions to remand the case in turn to the Secretary for further proceedings consistent with this opinion. In so doing, we obviously intimate no view whatever as to whether Mrs. Brown is indeed "disabled" within the meaning of the Social Security Act. That determination must, alas, await the conclusion of this labyrinthine process which may seem to Mrs. Brown to have no end. We trust that the District Court and ultimately the Secretary will not leave the case to languish by the wayside of this tortuous path.

*It is so ordered.*