**Roscoe SIMMS, Appellant,**

v.

**Louis W. SULLIVAN, Secretary, Department of Health and Human Services.**

No. 88–5198.

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 1989.

Decided June 27, 1989.

Jennifer Crawford, with whom Stephanie Forester was on the brief, for appellant. Michael Tankersley also entered an appearance, for appellant.

Susan A. Nellor, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., R. Craig Lawrence and John D. Bates, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Roscoe C. Simms challenges a district court order, granting summary judgment to the Secretary of Health and Human Services, who denied Simms's application for disability benefits under the Social Security Act. We conclude that the Secre-

tary failed adequately to develop the record concerning appellant's disability claim. Accordingly, we remand the matter to the Secretary for further proceedings.

## I. BACKGROUND

Appellant is 40 years old and has an eleventh grade education. In 1964, he lost his left arm below the elbow in a hunting accident; he now wears a prosthetic device on his left forearm. In 1977, he injured his back and neck while lifting a pump. Since that time, he has worked as a laborer for a demolition service and for two pipeline rehabilitation firms, for which he loaded equipment, kept equipment records, and drove trucks. His most recent job was at a hospital, where he (in different periods) performed yard maintenance, supervised interior maintenance, and was an automotive fleet operations manager; but that job ended in August 1984. Appellant currently serves as a volunteer Jehovah's Witness minister, in which capacity he conducts "home Bible studies" and visits the elderly.

Although appellant ultimately traces his current condition to the 1977 back injury, his claim for benefits under Titles II (Disability Insurance Benefits) and XVI (Supplemental Security Income) of the Social Security Act places the onset of disability at August 1984. Specifically, appellant alleges that he suffers from degenerative arthritis; carpal tunnel syndrome, compression of a nerve inside the carpal tunnel of the wrist; and C–7 radiculopathy, a disease affecting the nerve roots that emerge from the spinal cord at the seventh cervical vertebra and that may produce radiating symptoms into the arm. For the resulting pain, his treating physicians have prescribed a drug, Naprosyn; a TENS unit, which is an electrical nerve stimulation device that attaches to the arm; and a "cock-up" splint, apparently worn on the wrist.

### A. *Statutory Background.*

The Social Security Act defines "disability" as, *inter alia,* the "inability to engage in any substantial gainful activity by reason of any medically determinable ... impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). With certain exceptions, however, a person is "under a disability only if his ... impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Implementing regulations promulgated by the Secretary set up a five-step inquiry for the evaluation of a disability claim. The claimant must show that (1) he is not presently engaged in "substantial gainful activity," 20 C.F.R. §§ 404.1520(b), 416.-920(b); (2) he has a "severe impairment," *i.e.,* one which "specifically limits [his] ... ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c); and either (3) his impairment "meets or equals" an impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P, which, if shown, is conclusive on the issue of disability, 20 C.F.R. §§ 404.1520(d), 416.920(d); or (4) he is incapable of performing his previous work, 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant makes the step four showing, then the Secretary, at step five, considers the claimant's age, education, past work experience, and residual functional capacity to determine if he can do "other work." 20 C.F.R. §§ 404.1520(f), 416.-920(f).

### B. *Prior Proceedings.*

After appellant's application for disability benefits was initially denied, he requested and was given a hearing, at which he elected to proceed without counsel before an Administrative Law Judge, acting as the Secretary's initial delegate. The ALJ determined (at step three) that his impairment does not "meet or equal" those listed in Appendix 1, and (at step four) that appellant is unable to perform his past work, but (at step five) denied benefits based upon testimony from a vocational expert to the effect that appellant had acquired from his last job "transferrable skills including su-

pervising, record keeping, and dispatching" that enable him to do certain kinds of "other work." The expert took into account appellant's "residual functional capacity for light work activity," the amputation of his left forearm, and his "inability to write for more than 15 minutes" with his right arm. With these limitations in mind, the expert offered several examples of work that appellant could perform: "service station manager, auto station attendant (without repairs), auto rental clerk, dispatcher of motor vehicles and security guard dispatcher." Even if limited only to "sedentary exertion," he said, appellant "would still be able to perform the work as an auto rental clerk and dispatcher."

After the Appeals Council of the Social Security Administration rejected appellant's appeal, he filed a civil action in district court. The court granted summary judgment in favor of the Secretary, and Simms filed this appeal. He has been represented by counsel at each stage subsequent to the hearing before the ALJ.

## II. STANDARD OF REVIEW

In a disability proceeding, the ALJ "has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability." *Diabo v. Secretary of HEW*, 627 F.2d 278, 281 (D.C.Cir. 1980). The ALJ's "duty to probe and explore scrupulously all the relevant facts is particularly strict" when the claimant is not represented by counsel at the hearing. *Id.* at 282.

Based upon a record so compiled, we confine our review to "determining whether the Secretary's decision that [the claimant] was not disabled is supported by substantial evidence...." *Brown v. Bowen*, 794 F.2d 703, 705 (D.C.Cir.1986) (*citing* 42 U.S.C. § 405(g)). This standard of review "calls for careful scrutiny of the entire record," *Brown*, 794 F.2d at 705, to determine whether the Secretary, acting through the ALJ, "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits...." *Stewart v. Secretary of*

*HEW*, 714 F.2d 287, 290 (3rd Cir.1983). *See also Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir.1984) (remand for Secretary "to indicate explicitly the weight accorded to the various medical reports in the record").

In particular, the Secretary must accord "substantial weight" to the reports of "a claimant's treating physicians [who] have great familiarity with his condition...." *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir.1987). Should the ALJ look to the opinion of a vocational expert in determining the claimant's ability to perform "other work" than he has done before, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert. *Diabo*, 627 F.2d at 283.

## III. ANALYSIS

Appellant advances three major grounds upon which to fault the Secretary's decision. First, he claims not to have received a full and fair hearing, because the ALJ did not adequately develop the record, with the result that he was prejudiced by his lack of counsel at the hearing. Second, appellant claims that the ALJ did not consider all relevant medical evidence in the record and failed to accord substantial weight to the opinions of his treating physicians. Finally, appellant alleges that the foregoing errors rendered inaccurate the hypothetical questions that the ALJ posed to the vocational expert.

### A. *Development of the Record.*

■ Appellant points to four specific respects in which the ALJ's development of the record was inadequate. Three of these merit only the briefest mention. First, the ALJ did not fail to develop the record concerning transferable job skills; he relied upon a Vocational Report form, which appellant himself completed, giving detailed descriptions of his previous jobs.

Second, the ALJ was not remiss when, upon being informed that one of appellant's treating physicians was still "doing some testing," he did not suspend the proceedings to await new test results; moreover,

we note that the Appeals Council had the new test data before it when it declined to review the ALJ's decision.

Third, although appellant complains that the ALJ's use of leading questions put him in the position of either being contradictory or simply agreeing in order "to avoid being confrontational," our reading of the hearing transcript reveals no impropriety; the ALJ used leading questions in a conscientious effort to elicit, in an expeditious fashion, information from a claimant unrepresented by counsel.

Fourth and most important, appellant argues that the ALJ failed to develop evidence in connection with his complaints of pain and drowsiness. "Evidence of subjective pain is relevant and probative to the [ALJ's] ultimate determination of disability," *Diabo*, 627 F.2d at 282, although the Act makes clear that a subjective complaint of pain is not sufficient to establish disability; there must also be objective medical evidence of an underlying condition that would explain the pain. 42 U.S.C. § 423(d)(5)(A). *See also* 20 C.F.R. §§ 404.-1529, 416.929. Here, the ALJ concluded that "the claimant's allegations of constant and severe cervical and upper right extremity pain and weakness, and its limiting effects, are not credible *to the degree alleged*" in light of "the substantial weight of the objective medical evidence, the testimony of the claimant, and the observations of the [ALJ] at the hearing." (Emphasis added.)

Although an ALJ may wholly or partially discount a claimant's subjective complaints in light of the record as a whole, the ALJ's conclusion in this case clearly implies that he found appellant's complaints of pain credible *to some unspecified degree.* The ALJ mentioned the results of an electromyogram, showing that appellant has "mild" C–7 radiculopathy and "early" carpal tunnel syndrome, but gave no indication of the extent of the pain, if any, that those conditions could be expected to produce. Nor did the ALJ relate to the vocational expert the extent to which he found appellant to suffer from pain.

In addition to complaining of pain, appellant testified at the hearing that the prescription drug he takes for pain relief makes him drowsy. Medical reports in the record relate similar complaints, dating from 1980. Although appellant takes that medicine primarily at night, he told the ALJ that he sometimes has to take it during the day as well in order to combat "flare ups" of pain, and that, as a result, "the length of [his] days varies." Appellant also indicated that he wears his "cock-up" splint, as he did during the hearing—rather than take his medication—in order to remain "alert." Medical records show that one of his doctors instructed him to wear that device "as much as possible during the day as well as at night." But the record in this case does not reveal the degree to which the splint limits appellant's use of his right hand; apparently it is not insubstantial, however, as he cannot make a fist without removing the splint.

Appellant claims that if he is not to be drowsy during the day due to his medication, then he must use the TENS unit or the split—the upshot being that he will either be drowsy or have limited use on the job of his one remaining arm. The ALJ did not develop the record as to the frequency or severity of this potential impediment to appellant's ability to work. Nor, in his questioning of the vocational expert, did the ALJ refer to either the medication-induced drowsiness or the limiting effects of the alternative medical devices.

It is reasonably clear that, had appellant been represented by counsel at the hearing, the record on this subject would have been more fully developed. Accordingly, we must remand the case for the Secretary to reopen the record in this respect relevant to step five of his inquiry.

B. *The ALJ's Consideration of the Medical Evidence.*

Appellant raises two objections of substance to the ALJ's evaluation of the evidence.

■ 1. *Ability to Lift.* The ALJ found that appellant could perform "sedentary" work, defined to include the "lifting [of] no

more than 10 pounds," 20 C.F.R. §§ 404.-1567(a), 416.967(a), and even "light" work, which requires the "lifting [of] no more than 20 pounds," 20 C.F.R. §§ 404.1567(b), 416.967(b). Appellant, however, points to the reports of Dr. Goltz, stating that he cannot lift more than 10 pounds, and of Dr. Liu, suggesting that he simply "avoid lifting." We find no fault in the ALJ's decision to credit instead appellant's own acknowledgment, at the hearing, that he could "lift and raise up to 20 pounds."

At the same time, the ALJ's use of appellant's remark in isolation from its context is not entirely true to its meaning. Appellant said: "I can raise [20 pounds] but I can't hold it"—testimony consistent with Dr. Liu's 1985 notation that appellant "ha[d] started to drop objects." Nonetheless, the ALJ did not develop further evidence that might more precisely identify the extent of appellant's ability to hold objects. Nor did he relate appellant's statement in the hypotheticals presented to the vocational expert; thus, although the expert was present for Simms's testimony, we have no way of knowing whether he independently recalled, credited, and factored in that testimony when he stated that appellant could perform sedentary work. As a result, the vocational expert may have opined that appellant could do certain jobs that, in fact, entail more carrying than he is able to do. The record is simply inadequate to reject appellant's claim that he "would be worthless" in the "light work" occupations that the vocational expert identified as suitable for him, *viz.,* "service station manager [and] auto station attendant (without repairs)"—the latter of which entails "pumping gas, cleaning windshields, determining the need for oil, tire pressure and that type of thing."

The ALJ's incomplete account of appellant's testimony also calls into question the vocational expert's conclusion that appellant could do jobs involving only "sedentary work." Such jobs may entail not only lifting up to 10 pounds but also "carrying" articles such as "files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.-967(a). Since the ALJ did not explore the extent of appellant's ability to hold and to carry objects, we have no basis in the record upon which to evaluate the ALJ's conclusion, based upon the vocational expert's opinion, that appellant could work as an "auto rental clerk and dispatcher." In this respect, too, further proceedings are needed on remand.

■ 2. *Evidence from Treating Physicians.* Appellant draws attention to the opinion of one of his treating physicians, Dr. Liberman, that he has been "totally disabled" since June 1984. We find no fault in the ALJ's decision to discount this opinion, however, notwithstanding the deference usually owed to a treating physician. Dr. Liberman based his conclusion primarily upon appellant's "having very little use of the left arm." The ALJ related that underlying fact to the vocational expert, who, in turn, took it into account in identifying jobs appellant might hold. Second, we note, as did the ALJ, that Dr. Liberman had only recently begun to treat appellant, putting him on the same footing as the government's consulting physicians, Drs. Harris and Lossing, both of whom suggested that appellant is not disabled.

The ALJ, however, offered no reason for crediting the consulting physicians over Dr. Liu, who had examined appellant regularly since 1978. Although Dr. Lossing reported that electromyogram tests performed on appellant in June 1986 were "normal" and "rule[d] out carpal tunnel syndrome and cervical radiculopathy," Dr. Liu, that same month, opined that appellant suffered from a permanent and major disability. In December 1984, a specialist to whom Dr. Liu referred appellant for electromyogram tests got results "compatible with" mild C–7 radiculopathy and early carpal tunnel syndrome.

In addition, Dr. Liu had opined as early as 1978 that "the reason for the prolongation of [appellant's] subjective complaints [of pain] is that the right upper extremity and right shoulder blade are much more hypertrophied than the left, due to the fact that [appellant] has the amputated left upper extremity, and most of his work, therefore, is done with the right extremity."

The ALJ made no mention of this opinion, which, if noticed, could have affected his evaluation of the objective medical evidence as a factor in discounting appellant's claim to experience, in the ALJ's words, "constant and severe ... upper right extremity pain and weakness." On remand, the ALJ should explain what weight he attaches to Dr. Liu's conclusions, or if he attaches none, his reasons therefor.

## C. *Use of Vocational Expert.*

 Appellant argues that the vocational expert's opinion that he could work as a dispatcher—of automobiles or security guards, for instance—is inconsistent with the premise, conveyed by the ALJ, that appellant can write for only 15 minutes at a time. Appellant fixes upon the expert's statement that dispatching work "might involve continuous writing that could exceed an [*sic*] half hour." As the expert explained further, however, a dispatcher would have "10 seconds to 1 full minute of rest between calls" and, in many such positions, may use a tape recorder instead of writing messages by hand.

Although the ALJ properly relied upon the vocational expert with regard to the writing tasks associated with alternative jobs, the foregoing analyses reveal serious deficiencies in the ALJ's description of appellant's condition, which undercut the expert's opinions in other regards. Specifically, the ALJ did not advise the expert of appellant's complaints of pain, even though the ALJ found those complaints credible to some degree; did not direct the expert to consider that appellant might be drowsy due to medication or, alternatively, that appellant might use a medical device that could limit the usefulness of his remaining arm; and failed to supply information about appellant's limited ability to hold and carry such objects as he could lift. These omissions undermine the foundation for the expert's ultimate conclusion that there are alternative jobs appellant can do.

## D. *Other Claims.*

Appellant also raises several evidentiary objections that are without merit and that do not warrant full discussion: *viz.,* that the ALJ failed to consider the reports of several treating physicians other than Dr. Liu, mischaracterized the report of one doctor, and lacked substantial evidence for the finding (at step three of the disability analysis) that appellant's impairment does not "meet or equal" those described in Appendix 1, *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05C.

## IV. CONCLUSION

We reverse and remand for the Secretary to rule anew (at step five) on appellant's ability to perform "other work" than he has previously done. In doing so, the Secretary should more fully develop the record concerning appellant's pain and drowsiness as well as his ability to lift, hold, and carry objects as these limitations bear upon his ability to perform "light" or "sedentary" work. In addition, the Secretary should explain what weight, if any, he has given Dr. Liu's medical report. If, on remand, the Secretary again relies upon the opinion of a vocational expert, then he must fully and accurately describe appellant's condition to establish the foundation for any questions put to that witness.

*So ordered.*