Catherine MALES, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant.

Civ. A. No. 89–0521.

United States District Court,
District of Columbia.

Nov. 30, 1989.

Joseph Chodes, Bailey's Crossroads, Va.,
for plaintiff.

Daniel J. Standish, Asst. U.S. Atty.,
Washington, D.C., for defendant.

## ORDER

REVERCOMB, District Judge.

This matter is before the Court pursuant
to Plaintiff's Motion for Reversal or Re-
mand and Defendant's Motion for Affirm-
ance of the decision by the Secretary of
Health and Human Services (Secretary) de-
nying Plaintiff's application for Supplemen-
tal Security Income benefits under Title
XVI of the Social Security Act. 42 U.S.C.
§§ 405(g), 1383(c)(3).

## Statement of Facts

On July 3, 1985, Plaintiff went to D.C. General Hospital for treatment for carpal tunnel syndrome in her left hand and wrist. In December 1985 Plaintiff again went to D.C. General complaining of left hand pain and weakness. The results of diagnostic testing were consistent with carpal tunnel syndrome of the left wrist.[1] In April 1986 D.C. General physicians performed a carpal tunnel release which is a surgical procedure to relieve the symptoms of carpal syndrome. After the operation Plaintiff complained of some pain and stiffness in her hand but by September 1986 she had no complaints.

From December 1985 Plaintiff had been seen as an outpatient for rheumatoid arthritis with complaints of pain and stiffness in her hands, fingers, feet and ankles. There was swelling in her fingers and she was unable to flex them and had a weak grip. There was no marked swelling or gross deformity with her hands, feet and ankles and flexion and extension were fine. Plaintiff took Naprosyn and Tylenol for relief of pain.

In January 1988 Plaintiff visited D.C. General's rheumatology clinic complaining that her feet and ankles were painful and that her ankles and heels were swollen. Plaintiff also complained of pain in her hands and wrists although the pain was primarily in her right hand and wrist, the carpal tunnel release she had previously undergone having relieved her of the pain in her left wrist. She related that she achieved temporary relief of her pain with the medication Indocin. Physical examination of the Plaintiff revealed that there was some decreased range of motion in the right wrist. There was mild tenderness in Plaintiff's feet but the soles and digits were normal and had full range of motion. Plaintiff's shoulders and elbows were also normal and there was a full range of motion in Plaintiff's knees which were nonedementous, or in other words, not swollen. A D.C. General physician concluded that

Plaintiff had nonspecific rheumatologic complaints which needed further evaluation. He prescribed Indocin, referred Plaintiff for x-rays of her hands, feet, ankles, and knees, instructed her in exercises, and asked her to return to the clinic in two weeks.

Plaintiff returned to the clinic in February 1988. Physical examination revealed that Plaintiff had swollen wrists with no tenderness but with slightly decreased range of motion. Her elbows were also swollen but she had full range of motion. Her feet were swollen and her ankles were slightly tender on lateral motion. She had a full range of motion of the shoulders and knees and there was no swelling of the knees. The treatment plan was to continue Plaintiff on Indocin and see her back in the clinic in three months.

Dr. Franklin Garmon performed an orthopedic examination of Plaintiff in July 1987 for consultative purposes at the request of the Secretary. Plaintiff complained to him of pain in her hands and feet and stated that since the onset of her impairments in 1985 her joint pains have increased in severity. She stated that her medication tends to help but does not cure the pain. She stated that she can only walk for one and a half blocks before she has to stop because of the pain.

Dr. Garmon reported that Plaintiff was in no acute distress and walked with an erect gait but with some guarding. There was no atrophy of the musculature of Plaintiff's legs. Ankle range of motion was normal but reportedly painful and they were mildly swollen. Toe motions were also normal but there was some tenderness. Range of motion in the hands, fingers and wrists was essentially normal although there was mild enlargement of one of the joints of Plaintiff's right index finger with tenderness. Grip strength was marginal but strength in the other muscle groups in Plaintiff's arms and legs was essentially normal.

---

1. Carpal tunnel syndrome occurs when the medial nerve becomes compressed as it passes through the wrist. The condition can result in pain or abnormal sensation in the hand or forearm. *The Merck Manual of Diagnosis and Therapy* 1444 (15th ed. 1987).

Dr. Garmon diagnosed that Plaintiff had rheumatoid arthritis involving the ankles, a joint in her right hand and probably her wrist. He recommended that Plaintiff be maintained on the anti-inflammatory medication of her choice. He was of the opinion that if her symptoms increased she might benefit from other forms of therapy. X-rays ordered by Dr. Garmon revealed that Plaintiff's hands and ankles were entirely normal but that her feet had a mild hallux valgus deformity.[2]

At the hearing before the Administrative Law Judge (ALJ) the Plaintiff testified that on a typical day she is so tired after being out of bed for only half an hour that she can hardly walk. Plaintiff said she can stand no longer than twenty minutes before the bottom of her feet begin to burn. She walks to the shopping center and to the mail box. Walking at times frightens her because if she steps on something on the ground that she didn't see it hurts her feet. Once while walking her ankle simply gave way after having been on her feet for too long and she fell and knocked out two bottom teeth. Sometimes her feet swell so much that she cannot wear shoes. She testified that she spends most of the time sitting with her feet elevated watching TV or reading a book.

She testified that she prepares her own lunch and dinner but sometimes it is almost too much of an effort to do more than open a can of soup. She cannot lift anything over five pounds because she has no strength in her hands. She testified that she has very little stamina and tires easily.

Plaintiff testified that she has a home and has a young couple and an elderly gentleman living with her. The young woman helps her with most of the housework and often cooks for the Plaintiff. The elderly gentleman does the yard work, minor repairs and most of the driving for Plaintiff. Plaintiff occasionally drives her car to the store about ten minutes away from her house but at times has trouble driving because the bottom of her feet become sore and burning.

The vocational expert witness testified that Plaintiff's past employment experience was classified as semi-skilled and sedentary and light.[3] In response to questioning by the ALJ the vocational expert testified that based on the Plaintiff's age, education and work experience,[4] and on the further assumption that the operation of automotive equipment was not part of the job duties, Plaintiff could perform clerical work as normally performed in the national economy. Upon further questioning by the ALJ the vocational expert testified that there were sedentary jobs that Plaintiff could perform which would satisfy the provisions of the vocational adjustment rules,[5] such as a router clerk or a telephone solicitor. Finally, in response to the ALJ's question whether there was any work which Plaintiff could perform in the labor market assuming that she in fact suffers from all the symptoms and limitations that she described, the vocational expert testified that Plaintiff would be precluded from performing any job.

### Legal Analysis

The ALJ's August 25, 1988 decision is the final reviewable decision of the Secretary in this case. Plaintiff contends that the decision of the Secretary that Plaintiff

---

2. Hallus valgus is angulation of the great toe away from the midline of the body or toward the other toes. The great toe may ride over or under the other toes. *Dorland's Illustrated Medical Dictionary* 578 (26th ed. 1985).

3. Sedentary means that her maximum lift is ten pounds and frequent lift up to ten pounds. Light work means a maximum up to twenty and frequent lift up to 25 pounds.

4. The Plaintiff testified that she was fifty-eight, had a high school education and could read and write.

5. The ALJ and vocational expert had referred to the vocational adjustment rule of § 201.00(f) which provides:

> In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over) there must be little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.

is not disabled and accordingly not entitled to Supplemental Security Income is not supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (standard of review); *Davis v. Heckler*, 566 F.Supp. 1193, 1195 (D.D.C.1983).

■ The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905. The Act further provides that an individual will be determined to be disabled "only if his impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B). *See Gilliland v. Heckler*, 786 F.2d 178, 182 (3d Cir.1986). In determining whether a claimant for supplemental income is disabled the factors to consider include: (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the individual's age, education, and work history. *Cowan v. Bowen*, 664 F.Supp. 587, 588 (D.D.C.1987).

■ This Court rules that the Secretary's decision must be reversed and remanded on the ground that the ALJ's reliance on some of the vocational expert's testimony is inconsistent with some of his other testimony.

In his decision the ALJ evaluated the vocational expert's testimony as follows:

Dr. Feingold opined that the claimant's past relevant work as a clerical worker was basically sedentary as normally performed in the national economy. Such work was normally performed in a sedentary manner. The Vocational Expert went on to state that considering the limitations as above, and her age, education and work experience which the undersigned Administrative Law Judge found applicable to the claimant, she would not be precluded from performing her past relevant work as a clerical worker as that work is normally performed in the national economy. In addition, the claimant's restrictions did not preclude her from performing other sedentary job functions such as a router clerk, or telephone solicitor.

The ALJ then concluded that

[b]ased upon the foregoing evidence, the undersigned Administrative Law Judge concludes that the claimant retains the residual functional capacity to perform her past relevant work. In addition, she retains the residual functional capacity to perform other jobs which exist in significant numbers within the national economy. [Accordingly,] ... the claimant does not meet the definition of "disability," as that term is contemplated within the Social Security Act.

The problem with the ALJ's reliance upon the vocational expert is that it ignores the expert's fundamental qualification to his testimony. The final question that the ALJ asked the expert was whether there was any type of work that Plaintiff could perform in the competitive labor market if the Plaintiff in fact suffered the pain, swelling and other matters that she described. The expert answered "[n]o," and as the following interchange between the ALJ and the expert illustrates, that answer was absolute:

ALJ: All right. Now under that circumstances is that correct that that would preclude all past relevant work?

VE: Right.

ALJ: And it would—also it would preclude all the jobs you listed, is that correct?

VE: Yes. All of them.

ALJ: And keeping in mind you only listed a couple there, is it correct that, under that view of the evidence it would preclude any and all work?

VE: Yes, sir.

The ALJ's failure to consider the expert's fundamental qualification of his opin-

ion as to the jobs that Plaintiff could perform would be of no significance if the ALJ had in fact totally discounted the Plaintiff's subjective complaints which the ALJ had posited to the expert. However, the Defendant concedes that the ALJ credited them to some extent where the ALJ found the Plaintiff's subjective complaints only "tempered" by the objective medical evidence. *Opposition to Plaintiff's Motion for Judgment Reversing the Decision of the Defendant* at 2. In order for the ALJ to rely upon the expert's opinion as to what jobs the Plaintiff could perform it was imperative that the ALJ accurately describe the Plaintiff's conditions, which would include the extent to which the ALJ credited Plaintiff's subjective complaints. In the recent decision of *Simms v. Sullivan*, 877 F.2d 1047 (D.C.Cir.1989), the court held that the failure of the ALJ to fully describe to a vocational expert the claimant's condition, including the claimant's "complaint's of pain ... [which] the ALJ found ... credible to some degree," undermined "the foundation for the expert's ultimate conclusion that there are alternative jobs appellant can do." *Id.* at 1053.

Accordingly, it is necessary to reverse and remand the Secretary's decision for a new hearing in order that the ALJ "fully and accurately describe" Plaintiff's condition to the vocational expert to establish the foundation for his testimony as to what jobs the Plaintiff is physically capable of performing.

It is hereby

ORDERED that Plaintiff's Motion for Reversal or Remand is GRANTED; and it is further

ORDERED that Defendant's Motion for Judgment of Affirmance is DENIED.