Excell WILKS, Plaintiff,

v.

Kenneth S. APFEL, Defendant.

No. CIV. A. 99–1767(RCL).

United States District Court,
District of Columbia.

Sept. 15, 2000.

Pro Se Excell Wilks, Washington, DC, for Plaintiff.

Paul Mussenden, Ausa, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter, brought under the Social Security Act, 42 U.S.C. § 405(g), is before the Court on defendant's motion for summary affirmance of the Commissioner's denial of benefits and plaintiff's motion for reversal. Upon consideration of the parties' submissions, the administrative record, and the entire record herein, defendant's motion will be denied and plaintiff's motion will be granted.

#### I.

Plaintiff applied for Supplemental Social Security Income ("SSI") on January 3, 1994 for aggravation of back and joint injury initially sustained in June 1986.[1] Plaintiff's application was denied initially and following a hearing before an Administrative Law Judge ("ALJ"). The administrative Appeals Council granted review and remanded the case to the ALJ in April 1997 for the taking of additional evidence concerning plaintiff's mental impairments and, if necessary, another vocational assessment considering the mental impairments. The ALJ conducted a second hearing in October 1997 and issued a written decision on November 20, 1997. The ALJ's decision became final on April 21, 1999, when the Appeals Council denied plaintiff's request for review. Plaintiff timely filed this action.

#### II.

This Court must affirm the Commissioner's decision regarding a claimant's disability if, on the basis of the entire record, it is supported by substantial evidence. 42 U.S.C. § 405(g); see *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Simms v. Harris*, 662 F.2d 774, 777 (D.C.Cir.1980). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C.Cir.1986). To determine whether the Commissioner's decision is supported by substantial evidence, the Court must "carefully scrutinize the entire record." *Davis v. Heckler*, 566 F.Supp. 1193, 1195 (D.D.C.1983). The Court may not reweigh the evidence and "replace the [Commissioner's] judgment regarding the weight and validity of the evidence with its own." *Davis*, 566 F.Supp. at 1195. "[B]ecause the broad purposes of the Social Security Act require a liberal construction in favor of disability, the Court must view the evidence in the light most favorable to the claimant. This way, the Court can give effect to the remedial purposes of the Social Security Act." *Davis v. Shalala*, 862 F.Supp. 1, 4 (D.D.C.1994) (internal citations omitted).

#### III.

The Social Security Act defines disability as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

---

1. In his complaint, plaintiff states that he first applied for benefits in 1988, was denied but did not appeal to the federal court because "improper legal litigation from Legal Services Inc. of Memphis, Tenn.," resulted in him missing the filing deadline. Complaint at 1. He states that the 1994 claim before this Court on review was filed "for the same retroactive benefits." *Id.*

42 U.S.C. § 423(d)(1)(A). The inability to engage in substantial gainful activity includes the inability to perform the claimant's previous work or other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Claims for Social Security disability insurance benefits are evaluated using a five-step process. A claimant may be found to have no disability at any one of the sequential steps. The claimant must prove (1) that he is not presently engaged in substantial gainful work, (2) that he has a severe "impairment," and either (3) that he suffers for more than twelve months from one or more listed impairments,[2] or (4) that he is incapable of performing past relevant work.[3] 20 C.F.R. §§ 404.1520(b)-(e), 416.920(b)-(e). If the claimant prevails on the first four steps, the fifth step shifts the burden to the Commissioner to make a finding of no disability only if the Commissioner proves that the claimant, based upon his age, education, work experience and residual functional capacity, is capable of performing other gainful work. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Simms v. Sullivan,* 877 F.2d 1047, 1049 (D.C.Cir.1989); *Brown v. Bowen,* 794 F.2d at 705–06.

In this case, the ALJ found that plaintiff had not engaged in substantial gainful work since 1994; that he suffered from "severe" impairments that were not, however, "listed in, or medically equal to" those under Appendix 1, Subpart P of the regulations; that he had no transferrable work skills and that he had the residual functional capacity to perform work within certain limitations. Record at 24–25. The ALJ found that plaintiff was not disabled at step five of the sequential disability evaluation process because a significant number of jobs were available to plaintiff within his residual functional capacity. Plaintiff disputes the ALJ's findings and asserts that the ALJ erred because, among other things, he failed to include plaintiff's claims of pain in the hypothetical to the vocational expert testifying at the hearing.

### 1. *Administrative Record*

At the time of the ALJ's decision, plaintiff was 53 years old and homeless. He graduated high school in 1962 and took college courses in 1978. Administrative Record ("AR") at 36–37. Plaintiff served in the military from 1965–69 assigned to infantry, which he describes as "search and destroy," *Id.* at 38. He identified no specific job duties while in the military, even when pressed by the ALJ. *See id.* at 48–49. He was honorably discharged upon completion of his enlistment period. *Id.* Plaintiff began assembly-type work at Firestone in 1972, but was discharged after he hurt his arm. *Id.* He claims to have "messed my back and arm up" from having to lift 100 pounds at a time. Thereafter, plaintiff held jobs "doing any type of work I could find." *Id.* He drove a forklift for Sears and lifted about 75 pounds at a time, but left after a "year or two" because his "arm was out of place" and he could no longer perform the work. *Id.* at 40–41. Plaintiff worked temporary jobs because he was "not able to perform [full time] work" due to sustaining a broken knee in 1985 "and my arm was already out of place then after those two conditions occurred, causing me to have to use my back more and now my back has arthritis . . . ." *Id* at 41. He was incarcerated from about 1976 to 1979. Plaintiff testified that he has been treated medically for arthritis of the back and elbow, the latter which "can't be corrected." *Id.* He testified about taking

---

**2.** A listed impairment is an impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404, "which [is] considered severe enough to prevent a person from doing any gainful activity". 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant found to have a listed impairment will be considered disabled.

**3.** Past relevant work is defined as work the claimant has done in the past. 20 C.F.R. §§ 404.1560(b), 416.960(b).

pain medication, primarily for back spasms. *Id.* 42–44. At the first hearing in 1995, plaintiff testified that he had worked for a temporary service performing "light industrial" jobs for eight hours on average two days a week, maybe 10 or 15 days a month, but not every month. *Id.* at 46, 58. Plaintiff testified that he is assigned to jobs "they think I can do," but states that he "can't keep a job, because most of the time I can't perform the work they want me to do." *Id.* at 47. He stated that he could "hardly lift more than 25 pounds." *Id.* at 56. At the second hearing in 1997, plaintiff testified that he had not worked since January 3, 1994, the day on which he filed his application for benefits. *Id.* at 71–72. Plaintiff stated "[m]y arthritis condition has elevated to the point where I got old ... fractures, and I'm suffering from osteoarthritis, which is a degenerative type of arthritis that attacks the joints, the muscle ... and the liver system ...." *Id.* at 74. Plaintiff also testified that he suffers from hypertension. In addition to his physical ailments, plaintiff submitted medical evidence from the Veterans Administration that he suffers from post-traumatic stress disorder. *Id* at 72.

Following the ALJ's hypothetical considering plaintiff's education, work background, mental health history, physical and mental limitations and personality traits, Record at 82–84, Vocational Expert Nancy Hughes testified that plaintiff could perform available jobs such as assembly, hand packing, laundry work and sewing machine operator. Record at 84–85.

Giving "great weight" to "psychological expert, Dr. Hutson" and "appropriate weight to the medical opinions in evidence ... and largely discounting [plaintiff's] unsupported subjective allegations," the ALJ concluded that plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and was capable of "standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. There are no physical nonexertional limitations."

Record at 23–24. The ALJ found a number of jobs existed for plaintiff in the national workforce; therefore, plaintiff was not disabled under the Social Security Act. *Id.* at 26.

### 2. *Discussion*

The record raises two concerns. The Court agrees with plaintiff's assertion that the ALJ erred in not including his subjective claims of pain in the hypothetical to the vocational expert and will therefore remand the case for further consideration. The Court raises *sua sponte* the issue of whether plaintiff knowingly waived his statutory right to counsel at the administrative proceedings and finds that he did not.

 This Court is not in the position of fact-finder and cannot reweigh the evidence before the ALJ. However, "[t]he ALJ must evaluate all the relevant evidence." *Taylor v. Heckler*, 595 F.Supp. 489, 492 (D.D.C.1984) (*citing Cotter v. Harris*, 642 F.2d 700, 704 (3rd Cir.1981)). "The ALJ's failure to evaluate probative evidence submitted by plaintiff or to explain why he deemed plaintiff's claim of pain not credible is 'good cause' to reverse the Secretary's decision on grounds that it is unsupported by substantive evidence." *Id.* (citation omitted). Defendant asserts that the ALJ "fully considered Plaintiff's allegations of pain and other subjective symptoms." Defendant's Motion at 20. While that may be true, the ALJ's reliance on the vocational expert's conclusion that plaintiff could perform certain types of available jobs was flawed where the hypothetical lacked any exploration of plaintiff's subjective claims of pain. "Should the ALJ look to the opinion of a vocational expert in determining the claimant's ability to perform 'other work' than he has done before, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert." *Simms v. Sullivan*, 877 F.2d at 1050. Those impairments include subjective claims of pain. *See Diabo v. Secretary of Health, Ed. and Welfare*, 627 F.2d 278, 281–82 (D.C.Cir.

1980). Although the ALJ apparently disbelieved the severity of plaintiff's alleged pain, he did not find and, based on plaintiff's testimony and the medical records, could not find that plaintiff suffered no pain. Therefore, the ALJ's failure to mention altogether plaintiff's subjective claims of pain in the hypothetical to the vocational expert, Record at 82–83, was fatal in light of the circumstances discussed below. *See Diabo v. Secretary of Health, Ed. and Welfare*, 627 F.2d at 282–3; *accord Simms v. Sullivan*, 877 F.2d at 1051.

 Individuals seeking SSA benefits have a statutory right to representation at their hearings. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. A meaningful waiver of that right requires that the claimant be properly informed about "the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991) (internal citations omitted). The ALJ informed plaintiff of his right to counsel at the *conclusion* of the proceedings and then offered to postpone the proceedings. Record 87–88. The relevant colloquy follows:

ALJ: Okay. Now, you know you have a right to have a lawyer or representative to be in these hearings with you, and all you have to do is if that's what you want to do is to tell me, and I will postpone the case so you can get one. Now, in this case I don't think we covered that with you, but I'm covering that with you now and asking you what is it, do you want to represent yourself like you've done through the hearing or do you want me to postpone it so we can get yourself a lawyer?

CLMT: No, I don't need you to postpone it—postpone the hearing. I don't have a lawyer for the hearing, but the last hearing we had I used paralegal services from legal services, and I didn't feel like she was being a good representative. So I have a case against legal services, and if I'm denied again, I'll have judicial review, and I will have a lawyer.

Record at 88.[4] The ALJ did not adequately inform plaintiff about his right to counsel, specifically what that right entailed. Even though plaintiff stated that he did not want a lawyer, it appears he did so to avoid further postponement of the proceedings and because of his skepticism, based on earlier representation by a paralegal, about the quality of legal services available to him at the administrative level. The Court cannot conclude on this record that plaintiff knowingly and intelligently waived his statutory right to counsel.

 The lack of an intelligent waiver is not fatal, however, if the ALJ properly developed the record. The ALJ has a special duty "to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination.... This duty to probe and explore scrupulously all the relevant facts is particularly strict when the claimant, as here, is not represented by an attorney." *Narrol v. Heckler*, 727 F.2d 1303, 1306 (D.C.Cir. 1984) (*citing Diabo v. Secretary of Health, Education and Welfare*, 627 F.2d 278, 281–82 (D.C.Cir.1980)) (other citations omitted). In addition, when a claimant has proceeded without representation at the administrative hearing, this Court has "a duty to make a 'searching investigation' of the record to ensure that the claimant's rights have been adequately protected." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) (*quoting Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972)).

The Social Security Act has a beneficent purpose and the Court must be extra careful in assuring that the rights of *pro se*

---

4. The record reflects the appearance of a "representative" at the first hearing held on

May 9, 1995. Record at 32.

claimants are not lightly dismissed. *See, e.g., Poulin v. Bowen, Poulin v. Bowen,* 817 F.2d 865, 870–73 (D.C.Cir.1987). Finding that the ALJ gave at best cursory consideration to plaintiff's claims of pain and that plaintiff did not knowingly and intelligently waive his statutory right to counsel, the Court concludes that plaintiff did not receive a fair hearing. Therefore, defendant's motion for summary affirmance is denied, the Commissioner's decision is reversed and this case is remanded to the Social Security Administration for further action consistent with this memorandum opinion. A separate Order accompanies this memorandum opinion.

### ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion issued with this Order, it is

**ORDERED** that defendant's motion for judgment of affirmance [# 16] is **DENIED**; it is

**FURTHER ORDERED** that plaintiff's motion for reversal [# 20] is **GRANTED**, thereby reversing the Commissioner's denial of benefits; it is

**FURTHER ORDERED** that all other pending motions are **DENIED** as moot; it is

**FURTHER ORDERED** that this case is remanded to the Social Security Administration for further proceedings consistent with this Order and accompanying Memorandum Opinion; and it is

**FURTHER ORDERED** that this case is dismissed and removed from the Court's Docket.