James R. **PARHAM,** Plaintiff,

v.

Shirley **CHATER,** Commissioner, Social Security Administration, Defendant.

Civil Action No. 96–1563.

United States District Court, District of Columbia.

April 30, 1997.

---

Benjamin T. Boscolo, Thomas Teodori, Greenbelt, MD, for Plaintiff.

Bruce R. Hegyi, Assistant United States Attorney, Washington, DC, for Defendant.

### MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment of Affirmance regarding Defendant's eligibility for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

### BACKGROUND

On April 6, 1992, Plaintiff James R. Parham filed an application for SSI benefits pursuant to 42 U.S.C. § 1381–1383(d) (1997). Plaintiff had his first administrative hearing on August 18, 1993, before the Honorable Paul F. Sullivan, an Administrative Law Judge. Judge Sullivan denied Plaintiff's claim for SSI benefits. On September 14, 1995, Honorable John W. Taggart, an Administrative Law Judge, denied Plaintiff's claim for SSI benefits following Plaintiff's second administrative hearing. Both judges ruled that Plaintiff has a "severe impairment" within the meaning of 20 C.F.R. 404.1520(c) (1996), but that the evidence did not demonstrate that the claimant's impairments, considered either individually or in combination, are of a severity to meet or equal any of the impairments listed in the Listing of Impairments at Appendix 1 to Subpart P of Regulation Number 404 (20 C.F.R. 404, Subpt. P, App. 1 (1996)). On June 12, 1996, the Appeals Council declined to review the ALJ's decision, and Plaintiff now seeks judicial review, pursuant to 42 U.S.C. § 405(g) (1996), of the Secretary of Health and Human Services's decision denying his claim for disability benefits.

### FACTS

The following facts are not in dispute: Plaintiff is a 44–year–old man with an eighth grade education. (*See* R. 83, 85, 109, 134.) He has a vocational background as a window cleaner, a sanitation worker and a food service worker. (*See* R. 85–6, 124–5, 134.) Plaintiff last worked at a McDonald's restaurant as a food service worker from 1990 until 1991, and is currently unemployed. (*See* R. 85–6.)

The Plaintiff alleges disability beginning in February 1990 due to: 1) an on-the-job accident occurring in 1979 in which he sustained fractures of the pelvis and hip and injuries to his spine, (see R. 87, 109, 141); 2) an epigastric hernia, (see R. 129); and 3) persistent problems with alcohol and drug dependency. (*See* R. 141.) Plaintiff's medical history reveals that in June 1987 he was treated for a compound jaw fracture and for alcohol abuse. (*See* R. 180, 331.) In January of 1992, Plaintiff sought inpatient treatment at the Veterans Administration ("VA") Medical Center for crack cocaine abuse, at which time he was advised to attend Narcotics Anonymous and Alcoholics Anonymous. (*See* R. 177, 178.)

On April 14, 1992, Plaintiff sought treatment at the VA Medical Center for lower back and foot pain which he attributed to a 1979 motor vehicle accident. (*See* R. 173.) X-rays of Plaintiff's feet appeared normal. (*See* R. 185.) The attending physician diagnosed Plaintiff as having status-post trauma and degenerative joint-disease, and prescribed Motrin, bed rest, use of a heating

pad, and a decrease in activities. (*See* R. 174.)

On April 22, 1992, Plaintiff was diagnosed at the VA Medical Center with an epigastric hernia. (*See* R. 174.) On May 5, 1992, Plaintiff underwent surgery for the hernia and tolerated the procedure well. (*See* R. 158, 244.) He was discharged on May 9, 1992. (*See* R. 158.)

Immediately prior to that surgery, on April 27, 1992, Plaintiff reported in a Vocational Report that he had suffered from arthritis for ten years and that his condition had deteriorated in recent months. (*See* R. 329–30.) Plaintiff noted no relief from Motrin. (*Id.*) Plaintiff also complained of pain in his fingers and wrists. (*See* R. 330.) He underwent an examination which indicated generalized tenderness over both feet and no gross deformities. (*See* R. 329–30.) The examination revealed Plaintiff's full range of motion of both hands, wrists, ankles and feet. (*See* R. 330.) Additionally, the physician noted that the x-rays taker on April 14, 1992 had been normal. (*Id.*) The provisional diagnosis ruled out generalized arthropathy. (*See* R. 329–30.) Motrin was discontinued and the physician prescribed Naprosyn. (*See* R. 330.)

On May 18, 1992, Plaintiff related in a Vocational Report that since his illness (the hernia) began, "he could not stand too much, pull or lift anything." (*See* R. 129.)

On June 23, 1992, Plaintiff underwent a psychiatric evaluation performed by Giuseppe Scarcella, M.D. (*See* R. 183–197.) Dr. Scarcella recorded that Plaintiff attempted to cooperate during the interview, but noted that questions had to be repeated and Plaintiff often appeared perplexed and uncertain about the answer to give. (*See* R. 183.) Dr. Scarcella believed Plaintiff's account of his history to be only partially reliable because of omissions, contradictions, and evidence of memory impairment. (*See* R. 183.) Plaintiff reported that he continued to use alcohol and drugs. (*Id.*) He claimed that his drinking had decreased in frequency (consuming one pint of liquor "not every day"), and that he used cocaine instead of heroin. (*Id.*) Plaintiff related that he was supported by family members and did very little during the day.

(*Id.*) He reported that he attended group therapy sessions at the Veterans' Administration hospital for alcohol and drug use, but that he was receiving no medication. (*See* R. 184.)

Dr. Scarcella found the claimant's mood to be fairly depressed and stated that he appeared to be a "somewhat distant, absent, and perplexed individual." (*Id.*) Plaintiff indicated that he heard voices calling his name and he occasionally spoke back to them.. (*Id.*) Dr. Scarcella found that Plaintiff could not perform simple calculations, but that his interpretation of proverbs was complete. (*Id.*) Dr. Scarcella considered Plaintiff's judgment to be impaired, but found no evidence of process impairment and no delusional ideation. (*Id.*) Dr. Scarcella's diagnosis of Plaintiff recognized Plaintiff's alcohol dependence associated with cocaine abuse and past history of opiate dependence (which was in remission at the time of the examination). (*See* R. 184.) Dr. Scarcella noted that the Plaintiff's inclination to abuse alcohol and drugs would render him incompetent to handle funds. (*Id.*)

Dr. Willie Thompson, M.D., performed an orthopedic examination of Plaintiff on July 1, 1992. (*See* R. 203–5.) The Plaintiff reported a 14–year history of low back pain, but no pain in the lower extremities and no numbness, tingling, paresthesias, or weakness. (*See* R. 203.) Dr. Thompson noted that the Plaintiff had a full range of motion of the cervical spine and the upper extremities, without evidence of muscle wasting or atrophy. (*See* R. 204.) X-rays of Plaintiff's lumbosacral spine appeared normal. (*Id.*) Dr. Thompson reported that there was no medical evidence of "ratable" physical impairment in accordance with American Medical Association Guidelines. (*See* R. 205.) He concluded that the Plaintiff was capable of performing most all routine work activities of daily living without limitations. (*Id.*)

Plaintiff was hospitalized on May 11, 1993 for detoxification. (*See* R. 216.) He reported that he used heroin on a daily basis, and that he used cocaine twice a week. (*Id.*) He reported that he consumed seventy-two ounces of beer and one pint of vodka on a

daily basis and drank one pint of wine two or three times a week. (*See* R. 217.) Plaintiff reported that he had used alcohol, heroin and cocaine all within twenty-four hours prior to admission. (*Id.*) Additionally, a drug screen was positive for cocaine. (*See* R. 216–7.) Plaintiff reported a history of blackouts and one alcohol-related seizure requiring hospital treatment. (*Id.*) Plaintiff denied delusions or hallucinations, and his thinking was considered to be coherent and goal-directed. (*See* R. 226.)

## DISCUSSION

### Standard of review

The Court has jurisdiction over the final judgments rendered in cases arising under 42 U.S.C. § 405(g). *See* 42 U.S.C. § 405(g) (1997). In reviewing the administrative record, the Court does not try *de novo* the factual issues involved, but instead must affirm the Secretary's decision if it is supported by "substantial evidence" in the record and is not tainted by an error of law. *See Brown v. Bowen*, 794 F.2d 703, 705 (D.C.Cir.1986); *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C.Cir.1987); *see also Di Benedetto v. Secretary of the Department of Health and Human Services*, 518 F.Supp. 786 (D.C.1981). In essence, the Court must not reweigh evidence, and is limited to determining whether the administrative decision rests upon substantial evidence. *See Di Benedetto*, 518 F.Supp. at 787.

The Social Security Act ("Act") requires the Social Security Administration to give benefits to those "disabled" within the definition of the act. "Disability" is defined in the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (1997). There is a sequential five-step process for determining whether an individual has a disability covered under the Act. 20 C.F.R. § 404.1520 (1996). Plaintiff may be found to be "not disabled" at any of the five stages of this review. *Id.* In *Stankiewicz v. Sullivan*, this test was encapsulated as follows:

The claimant bears the burden of proving: first, that he is not engaged in substantial gainful work; second, that he has "severe" impairments, i.e., ones that "significantly limit" his ability "to do basic work activities"; third, that he has one of the impairments listed in Appendix 1, see 20 C.F.R., Part 404, Subpart P ("listing of impairments"), for the requisite duration; and fourth, that his impairment prevents him from engaging in past relevant work. If the claimant survives each of these steps, the Secretary has the burden of proving that given a claimant's age, education, work experience, and residual non-disability, he is still capable of doing work other than his past relevant work.

901 F.2d 131 (D.C.Cir.1990) (internal citations omitted). Both Judge Taggart and Judge Sullivan, the administrative law judges in this case, found that Plaintiff does not have an impairment or combination of impairments which meet the listing in Appendix 1 and, therefore, that Plaintiff does not meet the requirement of the third step of this test.

In his motion for summary judgment, Plaintiff contends that his complaint of a severe impairment survives the first four steps in the process for evaluating disability. The parties seem to be in dispute as to whether the third and fifth stages of the five-step review performed by the Appeals Council were properly evaluated based on substantial evidence in the record. Plaintiff asserts that his impairment meets the standards under the "Listing of Impairments" of Appendix 1 to Subpart P of 20 C.F.R. section 404 to qualify as a disability. Further, Plaintiff alleges that under the definition of disability, his pain is such that he is disabled.

### Claim of organic mental disorder

In his motion, Plaintiff relies partially on his substance abuse problems to place him in the category of disabled. Plaintiff's main problem, however, appears to be his reliance on alcohol and drugs. This is reflected consistently in the record. Defendant asserts a persuasive argument that the March 29, 1996 amendments to the Social Security Act preclude Plaintiff from obtaining supplemental security income based on a disability in

which the Plaintiff's alcohol or drug dependency is material to the determination that the Plaintiff is disabled. *See* P.L. No. 104–121 § 105, 110 Stat. 847 (1996).

Plaintiff's contention on this issue is that he meets the requirements of the listing for substance abuse as outlined in 20 C.F.R. § 404, Subpt. P, App. 1 § 12.09, which reads:

*Substance Addiction Disorders:* Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied. A. *Organic mental disorders.* Evaluate under 12.02.

\* \* \* \* \* \*

20 C.F.R. § 404, Subpt. P, App. 1 § 12.09 (1996). Plaintiff asserts that he suffers from an "organic mental disorder," and that he meets the requirements for this disorder so as to qualify him for supplemental security income. To prove the required level of severity of such a disorder, the Plaintiff must show, among other things, "medically documented persistence" of "disorientation to time and place" or "perceptual or thinking disorders" (such as hallucinations or delusions), which result in two of the following: 1) marked restriction of activities in daily living; 2) marked difficulties in maintaining social functioning, or 3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner.[1] *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.02 (1996). Severity is shown for an organic mental disorder when the list of requirements in section 12.02 are met in certain combinations.

Plaintiff relies on the findings of Dr. Scarcella on June 23, 1992, that Plaintiff appeared perplexed and confused and that he may experience alcoholic hallucinations. (*See* R. 184.) Dr. Scarcella noted only that the Plaintiff's history is "suggestive" that Plain-

tiff "occasionally" experiences alcohol hallucinosis. (*See* R. 184.) Furthermore, the record after Dr. Scarcella's examination fails to support Plaintiff's contention that he meets the requirements in section 12.02 for an organic mental disorder. When Plaintiff was hospitalized on May 11, 1993, he denied auditory and visual hallucinations and suicidal ideation. (*See* R. 226.) Although he reported a decrease in social activity in 1995, this did not seem to stem from any "disorientation to time and place," or "perceptual or thinking disturbance" (*See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.02(A) (1996)). Rather, Plaintiff reported that he could not go anywhere because of physical limitations. (*See* R. 90.) Based on the most recent record, Plaintiff does not meet the required level of severity in section 12.02 in order to qualify for SSI benefits due to an organic mental disorder stemming from alcohol and drug addiction.

Although Judge Taggart found in 1994 that Plaintiff's organic mental disorder causes him to have slight restriction of activities of daily living; slight difficulties maintaining social functioning; and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, under sections 12.09 and 12.02, a greater degree of functional impairment is necessary to meet the criteria under regulation B for an organic mental disorder. Judge Taggart found that Plaintiff's restrictions in activities of daily living and maintenance of social functioning to be only "slight," not "marked,"[2] as regulation B requires, and the medical records support this finding. It is not enough for Plaintiff to show that he often has "deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner." A finding of disability due to an organic mental disorder requires at least two of the criteria under section 12.02(B) to be met and Plaintiff has failed to do so on the record here. *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.02(B) (1996).

---

**1.** There are other possible standards listed in 20 C.F.R. § 404, Subpt. P, App. 1 § 12.02 which would, if met, show evidence of an organic mental disorder. Plaintiff has asserted only those mentioned.

**2.** "Where marked' is used as a standard for measuring the degree of limitation, it means more than moderate but less than extreme." 20 C.F.R. 404, Subpt. P, App. 1 § 12.00(C) (1996).

### Plaintiff's subjective complaints of pain

■ Plaintiff argues that his subjective pain is enough to render a classification of him as disabled. In support of his contention, Plaintiff relies on several cases from other circuits in which Plaintiff argues that disabling pain was sufficient for compensation. Title 42 U.S.C. § 423(d)(5)(A) dictates that in determining whether an individual suffers from a disability,

> an individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (1997).

While it has been established that "subjective complaints such as pain and physical discomfort can give rise to a finding of total disability, even when those symptoms are not fully supported by objective observable signs," *Hicks v. Heckler,* 756 F.2d 1022, 1023 (4th Cir.1985), this notion is taken out of context from the cases Plaintiff cites in his motion. In *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir.1976), the court considered the plaintiff's subjective complaints of pain, but stated also that "every doctor examining appellant found pain" so that "clinical findings and medical diagnoses supported by the subjective evidence overwhelmingly demonstrated the existence of disability" [emphasis added]. The subjective pain of the appellant in that case was also substantiated by family members and neighbors. *Id.* In *Hicks,* the court concluded that "Plaintiff's treating physicians have *uniformly* determined that she suffers from a severe and disabling impediment." 756 F.2d at 1023 (emphasis added).

All of the cases that Plaintiff cites in his motion, while they suggest that Plaintiff's subjective complaints of pain should be given consideration, also indicate that objective medical evidence should be given greater weight in evaluating whether Plaintiff is disabled. Here, there has been no medical evidence presented to indicate that Plaintiff suffers from a disabling impairment. None of the physicians in the record who examined Plaintiff subsequent to his hernia operation indicated that he had a disabling impairment. Additionally, Dr. Thompson, who examined Plaintiff in 1992, reported that there was no medical evidence to indicate the need to place any restrictions on Plaintiff's activities, and that Plaintiff was capable of performing most routine activities of daily living (*See* R. 205.)

### Burden of Proof

■ Although the Plaintiff has failed to satisfy the third step of the test used to evaluate disability claims, and is therefore considered "not disabled," this Court addresses the burden of proof argument because it was considered by one of the administrative law judges in this case. Plaintiff argues that the Defendant has not met the burden in step five of the analysis, where, if all four of the previous steps are successfully addressed by Plaintiff, the Secretary must show that an individual, "based upon his or her age, education, work experience, and residual functional capacity, is capable of performing gainful work" to prove that the individual is not disabled. Plaintiff contends that his age and level of education preclude him from securing gainful employment. As noted in the Defendant's brief, the Plaintiff, being under age 50, is classified as a "younger person" by the Social Security Administration. 20 C.F.R. § 416.963(b) (person under 50 is not generally considered to seriously affect the individual's ability to adapt to a new work environment). Plaintiff has an eighth grade education, which is classified as a "limited education" in 20 C.F.R. § 416.964(b)(3). This would qualify the Plaintiff for jobs which may require "ability in reasoning, arithmetic, and language skills," but not jobs which involve "the more complex job duties needed in semi-

**438**

skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3).

A vocational expert testified as to specific jobs that Plaintiff is qualified for despite his age and limited skill. The Plaintiff is capable of performing gainful sedentary work as a packer, an assembly worker, and a laundry worker. (*See* R. 100.) Any of these jobs would accommodate Plaintiff's lack of skill and sedentary needs, and these jobs exist in significant numbers in the national economy. The Secretary has met the burden in step five by showing that Plaintiff's age and education are not serious impediments to his gainful employment.

## CONCLUSION

Upon consideration of the parties' motions and the applicable law, the Court concludes that the final decision denying Plaintiff disability benefits should stand. Therefore, the Defendant's Motion for Judgment of Affirmance is granted, and Plaintiff's motion is denied.

### *ORDER*

Upon review of Plaintiff's Motion for Summary Judgment; Defendant's Motion for Judgment of Affirmance; the responses and replies thereto; the entire record herein and for the reasons stated in the accompanying Memorandum, it is by the Court this 29th day of April 1997

**ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**; it is further

**ORDERED** that Defendant's Motion is **GRANTED**.