Edward G. STANKIEWICZ, Appellant,

v.

Louis W. SULLIVAN, Secretary of the United States Department of Health and Human Services', Appellee.

No. 89–5021.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1989.

Decided April 10, 1990.

Bruce K. Billman, Woodbridge, Va., for appellant.

Daniel J. Standish, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., and R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee. Susan A. Nellor, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellee.

Before EDWARDS, Circuit Judge, ROBINSON, Senior Circuit Judge, and REVERCOMB, District Judge.*

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant Edward G. Stankiewicz appeals from the district court order granting the motion of the Secretary of Health and Human Services ("Secretary") for judgment of affirmance and denying appellant's motion for judgment of reversal. The Secretary had denied appellant's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The appellant claims that the Secretary's finding that appellant retains the residual functional capacity to perform his past relevant work as a professional hockey coach and scout is not supported by substantial evidence. This Court agrees and accordingly reverses the district court and remands to the Secretary for consideration of whether the appellant is capable of doing work other than his past relevant work.

I. FACTUAL BACKGROUND

Appellant was born on November 30, 1929. He completed the seventh grade of formal schooling and later enrolled in a correspondence school. He estimated that he reached the equivalency of the 10th or 11th grade.

Appellant was a professional hockey player for seventeen seasons until 1970 at which time he retired from playing and became a coach and scout. He left the game of hockey in approximately 1976 and

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

worked as a self-employed home renovator until his alleged onset of disability in May 1979. Appellant continued to work part-time as a renovator until August 1983. He also sought additional work during this time. He applied for jobs as a security guard in January and May of 1981, and in February of that year he applied for an unspecified job.

On February 8, 1978, Dr. McFadden reported appellant as "the classic broken-down hockey player now with the sore knees." A patellectomy was undertaken at that point and the doctor reported:

> This is a severe arthritic joint with huge spurs around the femur, a total loss of articular cartilage and spots on the inter-condylar notch. The patella itself was huge and covered with spurs and it was also lacking in spots as to where in some places the patellar aponeurosis or the quadriceps aponeurosis was lacking.

In May 1979, appellant was in an automobile accident and treated by his family physician Dr. Joel Kerschenbaum for muscle strain of the neck and back. Appellant had decreased motion in his back, but straight leg raise was normal. X-rays revealed degenerative disc disease of appellant's cervical and lumbar spines (*i.e.*, neck and lower back). Dr. Kerschenbaum treated appellant with cold packs and medication. In June 1979, Dr. Kerschenbaum reported that appellant had full flexion of his back, normal reflexes, and a normal gait. Appellant underwent physical therapy at the referral of Dr. Kerschenbaum and other physicians between August 1979 and January 1980, and again between September and December 1980. In March 1980, Dr. Kerschenbaum reported that appellant had degenerative changes in his back and neck that had existed before the car accident and which were exacerbated by that accident.[1]

## II. STATUTORY FRAMEWORK

The framework of Social Security Act provisions and regulations promulgated thereunder is well-established in this circuit. *See, e.g., Simms v. Sullivan*, 877 F.2d 1047, 1049 (D.C.Cir.1989); *Smith v. Bowen*, 826 F.2d 1120, 1121–22 (D.C.Cir. 1987); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C.Cir.1986).

The Social Security Act defines "disability" as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act further provides that an individual will be determined to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The claimant must establish that he was disabled prior to the expiration of his insured status. 42 U.S.C. § 423(a)(1)(A); *see also Bastian v. Schweiker*, 712 F.2d 1278,

---

1. The appellant continued to receive physical examinations and treatments after the expiration of his insured status on September 31, 1981.

    A 1984 x-ray of appellant's right knee, on which the patellectomy had earlier been performed, showed:

    > there is considerable erosion and irregularity of the articular surfaces at the right knee joint with moderate marginal osteophytic lipping present and probable loose bodies in the right knee joint. Since the previous examination of December, 1977, the right patella has been excised. Otherwise, there would not appear to have been any gross change at the right knee since the previous examination.

    In April 1986, appellant underwent orthoscopic surgery as treatment for osteoarthritis of his right knee. A physician reported that appellant did a significant amount of walking and that examination of appellant's neck was unremarkable. He also did not report any abnormalities of appellant's lower back.

1279–80 (8th Cir.1983); *Cowan v. Bowen,* 664 F.Supp. 587, 588 (D.D.C.1987).

The Secretary has established a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proving: first, that he is not engaged in substantial gainful work, *see id.* at § 404.1520(b); second, that he has "severe" impairments, *i.e.,* ones that "significantly limit" his ability "to do basic work activities," *see id.* at § 404.1520(c); third, that he has one of the impairments listed in Appendix 1, *see* 20 C.F.R., Part 404, Subpart P ("Listing of Impairments"), for the requisite duration, *see id.* at § 404.1520(d); and fourth, that his impairment prevents him from engaging in past relevant work, *see id.* at § 404.1520(e). If the claimant survives each of these steps, the Secretary has the burden of proving that given a claimant's age, education, work experience, and residual non-disability, he is still capable of doing work other than his past relevant work, *see id.* at § 404.1520(f); *see also Brown v. Bowen,* 794 F.2d at 706 (describing shifting burdens).

### III. PRIOR PROCEEDINGS

Appellant applied for disability insurance benefits on October 10, 1984. He alleged that he became disabled in May 1979 due to arthritis of the spine, knees and hip. The appellant appeared at a hearing before an Administrative Law Judge ("ALJ") on July 31, 1986. The ALJ reached his decision on August 28, 1986. The ALJ found at step two that the claimant suffered from osteoarthritis involving the knees, lumbar spine, cervical spine and right hip which "precludes activities which involve heavy lifting, prolonged and uninterrupted standing or walking, climbing, crouching, kneeling or crawling." However, the ALJ found at step three that appellant's condition did not meet or equal the requirements of any particular Listed Impairment. The ALJ further found at step four that "[b]ased on the claimant's description of his duties as a coach and scout, ... said employment does not require the performance of the aforesaid activities." The ALJ concluded that "[s]ince the claimant retains the capacity to perform his past relevant work activity as a hockey coach/scout, it is determined that he is not 'disabled' within the meaning of the Social Security Act." Accordingly, the ALJ did not reach step five to determine whether there was "other work" that appellant could perform given his age, education, past work experience and residual functional capacity.

The Appeals Council of the Social Security Administration rejected appellant's appeal on February 26, 1987. He filed a civil action for judicial review in United States District Court which granted the Secretary's motion for judgment of affirmance and denied appellant's motion for judgment of reversal on November 18, 1988, and Stankiewicz filed this appeal. Appellant was not represented by counsel before the ALJ.

### IV. RECORD REVIEW

Appellant claims that the Secretary's decision that appellant retains the ability to perform his past relevant work as a hockey coach and scout is not supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (substantial evidence test).

On the record before us, the appellant clearly made out a case, pursuant to 20 C.F.R. § 404.1520, that he had severe physical impairments which prevented him from engaging in his past relevant work prior to September 30, 1981, when his insured status expired.

In order for the claimant to prove that he lacks the physical and/or mental capabilities of performing his prior work he necessarily must establish what the requirements are of that past work. *Pelletier v. Secretary HEW,* 525 F.2d 158, 160 (1st Cir.1975). We hold that appellant has satisfied that burden in the instant case. In the Vocational Report appellant provided that a hockey coach must "walk or skate" seven hours a day. In addition, the appellant provided in the same Vocational Report that a hockey coach must stand for at least one hour a day. In total then, a

hockey coach is on his feet for eight hours a day. The line of inquiry by the ALJ at the hearing further delineates the duties of a hockey coach:

ALJ: Well he's, you're not required to skate as a coach are you?

STANKIEWICZ: Yes you have to get on the skates to demonstrate but you don't have to be fast like. You still have to go out there and put on the equipment like a part of the equipment, like skates and shinpads and go out, light equipment. But you have to demonstrate what you want the players to do. You can talk a blue streak in them, if you don't show them, demonstrate they won't understand you. You tell them you go around here and you handle the puck this way and this guy comes this way, basically if you show them, you do a lot of physical work, you're sledding when you're, because you're out there all the time and the other fellows take shifts.

The physical on-the-ice rigor of coaching is demonstrated by the Medical History that appellant provided to the Secretary:

I returned to Long Island, as coach and general manager in (1970). And while in my third year of coaching during one of our daily workouts, I hit the end of the rinkboards injuring both knees to some extent.

As to the duties of a hockey scout, there was no inquiry by the ALJ. However, in the Vocational Report the appellant stated that the job requirements of a scout required substantial amounts of travel and investigation of "off-field" players activities. The ALJ did not distinguish between the jobs of a coach and a scout when he found that appellant could perform his past relevant work as a "hockey coach/scout."

To support his decision that appellant can return to his prior work the Secretary relies upon an opinion rendered in 1980 by appellant's treating physician, Dr. Kerschenbaum, which stated that appellant's physical condition should not preclude ap-

pellant from returning to coaching hockey. Dr. Kerschenbaum provided, in pertinent part:

In summary, then, Mr. Stankiewicz probably has had outstanding changes in his lower back and lower neck which were there previous to his car accident in May. The car accident though, I think, played a significant role in aggravating his condition. Prior to the accident he was fairly active both recreational wise and his work. Since then recreation and his work have deteriorated significantly. He does have findings which are consistent with the generative changes in his neck and lower back and have continued so for almost 9 months now, with little improvement. I don't think at this time that Mr. Stankiewicz will ever completely recover. I think that we can maybe expect some gradual improvements over the next year or so but I do not think he will get back completely to normal. I think he will have some partial permanent disability but it would be difficult to estimate the degree. I do feel, however, that he will have trouble continuing his job as a renovating contractor but I do not feel that this should hinder him in his coaching of hockey.

Dr. Kerschenbaum's opinion is insufficient to support the Secretary's decision under the substantial evidence standard of review. Initially, we note that the opinion as a whole expressly recognizes some permanent physical impairments and provides what can only be described—at best—as a cautious prognosis for recovery. Further, and more fundamentally, to the extent that Dr. Kerschenbaum opines that the appellant's physical impairments "should not hinder him in his coaching of hockey," the opinion is merely conclusory and there is no record evidence that the doctor was aware of the physical requirements of coaching.[2]

The use of such a conclusory opinion to support the Secretary's decision is especially inadequate where the appellant spe-

**2.** In a letter dated October 24, 1986, Dr. Kerschenbaum recanted his opinion that the appellant's physical impairments would not prevent him from returning to his duties as a hockey coach. However, it is unclear from the letter on what grounds Dr. Kerschenbaum is recant-

ing his earlier opinion. It appears that to some extent Dr. Kerschenbaum has now concluded that appellant is unable to perform the duties of a hockey coach based on his expectation that appellant's physical impairments would have progressively worsened since 1980. Since Dr.

cifically proffered that a hockey coach must walk or skate seven hours a day and additionally stand for an hour a day. There is no record evidence rebutting appellant's showing of these physical requirements. The ALJ expressly found that appellant cannot "stand or walk for prolonged periods of time" and we cannot construe a seven-hour period of walking and skating as anything but prolonged. Although appellant stated to the ALJ that he does not have to "be fast like" on his skates, the record fact is that appellant must remain standing and otherwise "is out there all the time" and "do[ing] a lot of physical work" on his feet.

Accordingly, we hold that the Secretary's decision that the appellant is capable of performing his past relevant work is not supported by substantial evidence and that, on the contrary, the record contains substantial evidence that the appellant is *not* capable of performing his past relevant work. We reverse and remand for the Secretary to determine at step five whether appellant, given his age, education, work experience, and residual non-disability, is still capable of doing work other than his past relevant work.

*So ordered.*

Kerschenbaum's opinion may be based on appellant's condition after the expiration of his insured status we can afford little weight to the recantation.