Trinita JACKSON, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant.

No. CIV.A. 01–1410 (RMU).

United States District Court, District of Columbia.

April 2, 2002.

---

Lynn Edward Cunningham, George Washington University Law School, Community Legal Clinics, Washington, DC, for Plaintiff.

Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

REMANDING THE CASE TO THE SOCIAL SECURITY ADMINISTRATION

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court for a review of the final decision of the defendant, the Commissioner of Social Security ("Commissioner"), denying Trinita Jackson ("the claimant" or "the plaintiff"), Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. § 1382. Before the court are the plaintiff's motion for judgment of reversal and the defendant's motion for summary affirmance. In the alternative, both parties ask the court to remand this case for further proceedings. Upon consideration of the parties' submissions and the administrative record herein, the court remands this matter for further proceedings consistent with this Memorandum Opinion.

## II. BACKGROUND

### A. Procedural History

The plaintiff applied for SSI payments on May 24, 1999 and the Commissioner denied her application on initial review and again on reconsideration. *See* Administrative Record ("AR") at 10. The plaintiff sought and received a hearing on July 25, 2000 before Administrative Law Judge ("ALJ") Eugene Bonds. On November 2, 2000, the ALJ concluded that the plaintiff's impairment was not severe enough to meet any of the impairments recognized by the Act as conclusively disabling. *See* AR at 11. The ALJ further determined that the plaintiff had the residential functional capacity ("RFC") to perform light work that would enable her employment in a significant number of jobs in the national economy. *See* AR at 17. The Social Security Administration ("SSA") Appeals Council denied the plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *See* AR at 4–5. On June 4, 2001, the plaintiff filed her complaint with this court.

### B. Factual History

Trinita Jackson was born on May 4, 1968 and was 32 years old at the time of the administrative hearing. *See* AR at 29. At the hearing, Ms. Jackson testified that she lives independently with her one child, a five year-old daughter. *See id.* Before 1993 and the onset of her alleged disability, the plaintiff's past work included work as a temporary retail clerk and a home health aide in a nursing agency. *See* AR at 63. Since 1993, the plaintiff has supported herself and her child through two programs, Aid to Families with Dependent Children and Food Stamps.[1] *See* AR at 59.

---

1. In 1996, Congress replaced Aid to Families with Dependent Children with Temporary As-

The plaintiff suffers from diabetes mellitus, first diagnosed in 1996. *See* AR at 92. At the administrative hearing, the plaintiff alleged that her impairment meets or equals that of diabetes mellitus with neuropathy.[2] *See* AR at 28–29. Her testimony and the medical records indicated that her condition results in severe pain in both of her feet, producing calluses, blisters, and lesions on her feet. *See* Pl.'s Mot. for J. of Rev. at 4. She noted that she is not able to walk on her toes, and consequently walks with a severe limp. *See id.;* AR at 142.

Ms. Jackson reported that the pain arising from her alleged disability limits her ability to perform many activities. *See* AR at 31–36, 83. While she can attend to household chores, such as cooking and doing laundry, the pain forces her to take several breaks for rest. *See* AR at 34. She sits down whenever she can when performing these activities. *See id.* She further testified that she walks her daughter to school every day, but requires 30 to 45 minutes to walk the approximately two blocks to school. *See* AR at 32–33. She no longer attends church because she cannot walk to the public transportation needed to get there. *See* AR at 35.

Several doctors treated and examined the plaintiff in connection with her diabetes mellitus—the basis of her claim for disability benefits. Her treating physicians are Drs. Endeshaw and Hynes of The George Washington University Hospital. *See* AR at 256. Dr. Endeshaw reported that the plaintiff suffers from diabetic neuropathy and experiences "burning pain in both lower legs." *See* AR at 179. Dr. Hynes diagnosed Ms. Jackson as having "severe diabetic neuropathy," "marked neuropathy," and "painful neuropathy." *See* AR at 159–60. These physicians also documented the plaintiff's difficulty walking and the intense pain she experiences. *See, e.g.,* AR at 160, 201, 256.

### III. STANDARD FOR REVIEW

In this section, the court explains the proper scope of a district court's review of a Social Security Commissioner's decision regarding a claimant's disability. The court also describes the appropriate legal standard, and the ALJ's determinations pursuant to this legal standard.

### A. Scope of Review

■ If there is "substantial evidence" in the record to support the Commissioner's decision regarding a claimant's disability, then the district court must affirm the decision. *See Simms v. Harris,* 662 F.2d 774, 777 (D.C.Cir.1980). The substantial evidence standard entails a degree of deference to the Commissioner's decision. *See Davis v. Heckler,* 566 F.Supp. 1193, 1195 (D.D.C.1983). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Brown v. Bowen,* 794 F.2d 703, 705 (D.C.Cir.1986) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Even if supported by substantial evidence, however, the court will not uphold the Commissioner's findings if the Commissioner reached them by applying an erroneous legal standard. *See Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

sistance to Needy Families. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Welfare Reform Act of 1996), 42 U.S.C. § 601 *et seq.*

**2.** Diabetes mellitus with neuropathy is described by the regulations as: "demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station ...." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 9.08. (2002).

■ To determine whether the Commissioner's decision is free from legal error and supported by substantial evidence, the district court must " 'carefully scrutinize the entire record.' " *Davis,* 566 F.Supp. at 1195 (quoting *Klug v. Weinberger,* 514 F.2d 423, 425 (8th Cir.1975)). The court may not reweigh the evidence and "replace the [Commissioner]'s judgment regarding the weight and validity of the evidence with its own." *Davis,* 566 F.Supp. at 1195.

## B.  Legal Standard

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Walton,* 535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (No. 00–1937). The Act and its implementing regulations lay out a specific five-step process for evaluating a claimant's disability. *See* 20 C.F.R. §§ 404.1520, 416.920.[3]

First, the claimant must not have engaged in "substantial gainful activity" since the onset of the impairment. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she has a severe impairment, that is, one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the impairment is severe, the Commissioner must determine whether the impairment meets or equals a listed impairment in Appendix 1, which leads to a conclusive presumption of disability and ends the inquiry. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, App. 1.

If the impairment is not one that the SSA presumes to be disabling, however, then the evaluation continues to the fourth step. At this stage, the Commissioner determines whether the claimant is incapable of performing work that she has done in the past. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). If incapable of the past work, then at the fifth step, the Commissioner must determine the claimant's RFC to see if she can perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

■ Importantly, the Commissioner bears the burden of showing that the claimant is capable of performing other work. *See Brown,* 794 F.2d at 706. The Commissioner could meet this burden through the testimony of a vocational expert in order to ascertain the specific jobs that would accommodate the individual's specific RFC. If the Commissioner considers the opinion of a vocational expert in determining the claimant's ability to perform other work, the Commissioner must accurately describe the claimant's condition in any question the Commissioner poses to the vocational expert. *See Simms v. Sullivan,* 877 F.2d 1047, 1050 (D.C.Cir. 1989).

## IV.  ANALYSIS

In this matter, the Commissioner, through the ALJ, applied the five-step analysis described *supra* and determined, first, that the plaintiff had not engaged in substantial gainful activity since the onset of her impairment. *See* AR at 17. The ALJ then found that the plaintiff suffered from a severe impairment. *See id.* At Step 3, the ALJ found that the plaintiff's impairment, while severe, did not meet any of the listed impairments that are presumptively disabling. *See id.* Next, the ALJ found that the plaintiff could not per-

---

**3.** All references to the Code of Federal Regulations ("C.F.R.") are to the 2002 edition.

form any of her past relevant work. *See id.* He also found that the plaintiff had the residual functional capacity to perform "light" work and that, even given the plaintiff's limitations, a significant number of jobs exist in the national economy that the plaintiff can perform. *See id.*

The plaintiff contends that several errors taint the findings of the ALJ: First, the plaintiff argues that the ALJ did not properly consider the medical evidence supporting the plaintiff's claim of meeting a listed impairment. *See* Pl.'s Mot. for J. of Rev. at 5. Second, the plaintiff explains that the record does not support the ALJ's finding that the plaintiff's statements of pain are not entirely credible. *See id.* at 12. Third, the ALJ's finding that the plaintiff could perform "light" work lacks substantial basis in the record. *See id.* at 17. Fourth, and finally, the ALJ improperly considered evidence that the plaintiff did not follow prescribed treatment. *See id.* at 21.

In reviewing the ALJ's conclusions in light of the relevant legal standard, the court considers each of the plaintiff's arguments in turn.

**A. The ALJ Erred in Evaluating the Medical Evidence When Determining that the Plaintiff's Impairment Did Not Meet a Listed Impairment**

■ At Step 3 of his evaluation of the plaintiff's disability claim, the ALJ found that the plaintiff's impairments did not meet or equal one of the listed impairments in Appendix I of Subpart P of Regulation No. 404. *See* AR at 17. The ALJ reviewed the medical evidence in the record and determined that the evidence did not demonstrate that the plaintiff's impairments were severe enough. *See* AR at 11–12. The plaintiff urges that the administrative record does in fact support a finding that the plaintiff suffers from diabetes mellitus with neuropathy. *See* Pl.'s Mot. for J. of Rev. at 6–11. The plaintiff argues

that the ALJ erred in failing to accord proper weight to the opinions of the treating physicians. *See id* at 11. The court agrees and accordingly orders that the matter be remanded to the ALJ for further proceedings in accordance with the requirements of the D.C. Circuit.

■ This circuit has adopted the "treating physician" rule. *See Poulin v. Bowen,* 817 F.2d 865, 873 (D.C.Cir.1987). This rule accords substantial weight to the reports of treating physicians because they have greater familiarity with the claimant's condition. *See id.* "The treating physician's opinion regarding an impairment is usually 'binding on the fact-finder unless contradicted by substantial evidence.'" *Williams v. Shalala,* 997 F.2d 1494, 1498 (D.C.Cir.1993) (quoting *Murdaugh v. Secretary, Dep't of Health & Human Servs.,* 837 F.2d 99, 101 (2nd Cir.1988)). Thus, the Court of Appeals requires that an ALJ who rejects the opinion of a treating physician explain his reasons for doing so. *See Williams,* 997 F.2d at 1498 (citing *Simms v. Sullivan,* 877 F.2d 1047, 1052–53 (D.C.Cir.1989)). Failure to do so is reversible error. *See MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986).

In the instant case, the ALJ cited to the records of five physicians in evaluating the plaintiff's disability claim at Step One. *See* AR at 11–12. The records include a report from treating physician Dr. Hynes and reports from an examining physician, a podiatrist, and a consulting physician. *See id.* Several of the physicians whose reports the ALJ cited to, including the examining physician and podiatrist, had only one opportunity to examine the plaintiff. In contrast, the plaintiff's relationship with Dr. Hynes was an ongoing relationship. As such, the ALJ should have accorded controlling, binding weight to the reports of Dr. Hynes and Dr. Endeshaw, the other

treating physician. *See Williams,* 997 F.2d at 1498.

At no point, however, did the ALJ differentiate between the evidence from the treating physicians and the evidence from other medical experts. *See* AR at 11–12. Instead, the ALJ summarily rejected the evidence of all of the physicians as insufficient to demonstrate the existence of a disabling impairment. *See* AR at 12. Moreover, the ALJ did not cite to the records of one of the treating physicians, Dr. Endeshaw. *See* AR at 10–18. This oversight is troubling since Dr. Endeshaw's records indicate that the plaintiff indeed suffers from diabetes mellitus with neuropathy, a listed impairment that is *presumptively disabling. See* AR at 179.

The ALJ's decision leaves unanswered the question of exactly what legal standard he applied in weighing the plaintiff's treating physicians' opinions. Consequently, the court determines that remand is appropriate in this situation to allow the ALJ to reweigh the evidence pursuant to the treating-physician rule. On remand, if the ALJ chooses not to give binding weight to the findings of the treating physicians, then he must explain the reasons for this decision. *See Williams,* 997 F.2d at 1498.

**B. The ALJ Failed to Support With Substantial Evidence His Determination That the Plaintiff's Statements Concerning Her Impairments Are Not Entirely Credible**

■ The plaintiff next argues that the objective and subjective evidence fails to support the ALJ's determination that the plaintiff's claims of pain are not entirely credible. *See* Pl.'s Mot. for J. of Rev. at 12–17. The ALJ concluded that the plaintiff's statements regarding her symptoms "are not entirely credible in light of the degree of medical treatment required, the reports of the treating and examining practitioners, and the findings made on examination." AR at 13. Additionally,

the ALJ determined that the plaintiff's daily activities are not as "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id.* Because the court concludes that the ALJ's findings regarding the plaintiff's impairments are not supported by substantial evidence, the court remands the matter for further development of the record.

■ Evidence of subjective pain is relevant to the ALJ's ultimate determination of disability. *See Simms,* 877 F.2d at 1051. Under the regulations, pain is a symptom and its relevance is governed by 20 C.F.R. § 404.1529. As a threshold matter, objective medical evidence must exist that demonstrates that the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). If the medical evidence shows such an impairment, then the ALJ must evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how the claimant's symptoms limit his or her capacity for work. *See* 20 C.F.R. § 404.1529(c).

The evaluation of subjective symptoms necessarily involves credibility determinations and such determinations are for the fact-finder. *See Brown,* 794 F.2d at 706. The ALJ may not reject a claimant's statements about the intensity and persistence of his or her symptoms or about the effect of the symptoms on his or her ability to work solely because the available objective medical evidence does not substantiate the claimant's statements. *See* 20 C.F.R. § 404.1529. All information submitted by the claimant must be considered, including her statements and evidence submitted by the claimant's treating, examining and consulting physicians. *See id.*

In this case, the ALJ found, with little discussion, that the objective evidence did

not substantiate the severity of the plaintiff's symptoms. *See* AR at 15. The ALJ continued his evaluation, nonetheless, and considered the credibility of the plaintiff's subjective claims. *See* AR at 13. The ALJ discounted the severity of the plaintiff's symptoms by relying on the plaintiff's admissions in the Activities of Daily Living Form. *See* AR at 16, 81–83. The activities she listed included performing some household chores, walking her daughter to school, attending church, volunteering at a daycare facility, grocery shopping, listening to the radio, and going to the movies. *See* AR at 16. The ALJ's reliance on the activities as described in this form is misplaced.

First, the ALJ ignored the *limited* fashion the plaintiff engages in some of the activities she described on the form. For example, the plaintiff reported that she only attends "the movies" when she feels up to it, washes dishes just twice a week, and rarely leaves the house on other occasions. *See* AR at 82–83. Moreover, on the same form, the plaintiff indicated that all of her activities changed when she became disabled. *See* AR at 83. In his decision, the ALJ misleadingly lumps all of the plaintiff's reported activities together and refers to them as her "daily activities." *See* AR at 16.

Additionally, testimony at the administrative hearing corroborates the changes that the plaintiff notes in her form and further undermines the ALJ's findings. At the hearing, the plaintiff testified that it takes her 30 to 45 minutes to walk her daughter to a school only 2 blocks away and stops to rest several times along the way. *See* AR at 33. Her testimony also demonstrates that she no longer participates in earlier reported activities, including attending church, volunteering at the daycare facility, and grocery shopping. *See* AR at 31–35. The plaintiff testified that the pain in her feet prevented her from performing these activities and prevented her from walking to public transportation to engage in these activities. *See id.* The plaintiff also explained that when performing all of her household duties, she must sit down and take several rest breaks. *See id.* The activities cited by the ALJ as discrediting the plaintiff's claims of pain seem to punish the plaintiff for being a single mother who must get her daughter to school, cook for herself and her child, and provide a clean home to the best of her ability. *See* AR at 16.[4] In short, the ALJ's evaluation indicates that the ALJ did not consider all of the relevant evidence in the record.

## C. Substantial Evidence Does Not Exist in the Record to Support the ALJ's Finding that the Plaintiff Could Perform Light Work

The ALJ determined at Step 5, described earlier, of his analysis that the plaintiff's impairments left her with the RFC to perform light work. *See* AR at 17; 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ based this determination on his evaluation of the medical records and the plaintiff's subjective claims of pain, though the federal regulations require that the ALJ consider medical opinions and pain when determining the disability claimant's limitations. *See* AR at 14; Part IV.A–B *supra* (citing 20 C.F.R. §§ 416.927, 416.929). Because the court has already determined that the ALJ failed to conduct a proper evaluation on both of these factors, the court deems it necessary to remand this issue.

---

4. *See, e.g.,* Linda G. Mills, *A Calculus for Bias: How Malingering Females and Dependent Housewives Fare in the Social Security Disability System,* 16 Harv. Women's L.J. 211 (1993); Peter V. Lee *et al., Engendering Social Security Disability Determinations: The Path of a Woman Claimant,* 68 Tulane L.Rev. 1477 (1994).

### D. The Record is Unclear as to the ALJ's Use of Evidence of the Plaintiff's Failure to Follow Prescribed Treatment

■ The ALJ accurately points out medical evidence that indicates the plaintiff's non-compliance with some aspects of her treatment plans. *See* AR at 12, 16, 132, 133, 213. The parties agree that how the ALJ used this evidence in evaluating the plaintiff's claim for disability benefits is unclear from the decision. *See* Pl.'s Mot. for J. for Rev. at 21; Def.'s Mot. for Affirm. at 13. Failure to follow a prescribed treatment plan is a basis for denying a claimant benefits when following the treatment plan would restore the claimant's ability to work. *See* 20 C.F.R. § 404.1530. To use non-compliance with prescribed treatment plans in this way requires an extensive inquiry by the ALJ into the circumstances surrounding a claimant's non-compliance. *See id.* The ALJ's decision did not address these circumstances. Accordingly, the court remands this issue to allow the ALJ to specify how the plaintiff's failure to follow treatment plans factored into his decision. In addition, the court recommends that the ALJ conduct an inquiry into the circumstances of the plaintiff's decision not to follow the required treatment plans.

### V. CONCLUSION

For all these reasons, the court vacates the decision of the Commissioner and remands the case for further proceedings. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of April, 2002.

### *ORDER*

#### REMANDING THE CASE TO THE SOCIAL SECURITY ADMINISTRATION

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 2nd day of April, 2002, it is

**ORDERED** that the case is **REMANDED** to the Social Security Administration for further proceedings consistent with the Memorandum Opinion.

**SO ORDERED.**