Carl L. BROWN, Plaintiff,

v.

Jo Anne BARNHART, Commissioner, Social Security Administration, Defendant.

No. CIV.A.02–1752 EGS.

United States District Court,
District of Columbia.

May 24, 2005.

Carl L. Brown, Washington, DC, pro se.

Lynn E. Cunningham, Washington, DC, for Plaintiff.

Fred Elmore Haynes, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

Plaintiff Carl Brown brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Brown's claims for disability insurance benefits. Pending before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance. Upon consideration of the parties' submissions, the administrative record, the governing statutory and case law, and for the following reasons, Plaintiff's Motion is granted in part and denied in part; Defendant's Motion is denied; and this action is remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion.

### II. Background

#### A. Factual Background

Carl Brown, born on July 31, 1950, is a former construction worker seeking disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301 et. seq. ("the Act"). In 1976, Mr. Brown began working jobs related to the construction of the D.C. Metrorail system. His duties included concrete pouring, pipe cutting, and other heavy construction tasks. See Pl's. Mot. at 3. On July 3, 1991, Mr. Brown was injured at work when he tried to stop a piece of heavy equipment from sliding into a ditch. Administrative Record ("A.R.") 251.

Since that time, Mr. Brown has experienced persistent hip, back, and leg pain. He has received extensive medical treatment, including four back surgeries, with mixed results. See A.R. 142. Mr. Brown still complains of "chronic and severe pain in his legs and lower back and numbness in his legs," and there is some evidence that he may have "reached maximum medical improvement." Pl's. Br. at 5; A.R. at 100, 376.

These injuries have several alleged impacts on Brown's ability to work. First, Mr. Brown asserts that he has difficulty walking long distances and that he has chronic and severe pain that is aggravated by sitting or standing in one position for more than 15–20 minutes at a time. See Pl's. Br. at 5. Mr. Brown contends that this pain "limits [his] functioning and restricts his ability to meet the manipulative and postural demands of any job." Id. at 19. Furthermore, Brown alleges that the medication he is taking to relieve his chronic pain causes a general feeling of mental and physical incapacity and extreme drowsiness that interferes with his ability to work throughout the day. Id. at 15. Mr. Brown's physicians agree that he cannot return to construction work, but have expressed opinions that he might be capable of returning to sedentary or light manual labor. See, e.g., A.R. at 126, 376, 379, 405, 410.

#### B. Procedural History

Mr. Brown received worker's compensation payments from the time of his injury in 1991 until February 1, 1999. On July 9, 1999, Mr. Brown applied to the Social Security Administration ("SSA") for Title II disability insurance benefits. The Commissioner denied Brown's claim on August 4, 1999 and denied his request for reconsideration on August 17, 2000. A.R. 59–62, 65–68.

On September 21, 2001, at Mr. Brown's request, an Administrative Law Judge ("ALJ") held a hearing regarding Brown's application. A.R. 20–56. Mr. Brown filed an application for Title XVI supplemental security income ("SSI") benefits on the same day, and the ALJ allowed Mr. Brown to elevate the hearing to cover benefits

under both Titles II and XVI. *See* A.R. at 26–27. On February 22, 2002, the ALJ issued a partially favorable decision finding that Mr. Brown was "disabled" under the meaning of the Act at all times since he turned 50 years old on July 31, 2000. A.R. at 17. Therefore, Brown was eligible for SSI benefits "since the filing date of his application for supplemental security income, September 21, 2001." *Id.* However, because Mr. Brown was only 46 years old on December 31, 1996—the last date of his eligibility for disability insurance benefits under Title II—the ALJ concluded that Brown was not "disabled" at that time, and therefore was not entitled to disability insurance benefits based on his July 9, 1999 application. *Id.*

Mr. Brown's timely request for Social Security Appeals Council review was denied on June 21, 2002, making the ALJ's determination the "final decision" of the Commissioner for the purposes of judicial review. A.R. 4–5; *see* 42 U.S.C. § 405(g). This lawsuit followed.

## III. Discussion

### A. Standard of Review

Section 405(g) of the Social Security Act provides for judicial review of "final decisions" of the Commissioner of Social Security. 42 U.S.C. § 405(g). On review, "the court must uphold the [Commissioner's] determination if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen,* 826 F.2d 1120, 1121 (D.C.Cir.1987). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Bowen,* 794 F.2d 703, 705 (D.C.Cir.1986) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This standard "entails a degree of deference to the Commissioner's decision." *Jackson v. Barnhart,* 271 F.Supp.2d 30, 33 (D.D.C.2002).

"Even if supported by substantial evidence, however, the court will not uphold the Commissioner's findings if the Commissioner reached them by applying an erroneous legal standard." *Jackson,* 271 F.Supp.2d at 33; *see also Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

To determine whether the Commissioner's decision is free from legal error and supported by substantial evidence, the court must "carefully scrutinize the entire record," but "may not reweigh the evidence and 'replace the [Commissioner's] judgment regarding the weight of the evidence with its own.'" *Jackson,* 271 F.Supp.2d at 34 (citing *Davis v. Heckler,* 566 F.Supp. 1193, 1195 (D.D.C.1983)).

### B. Legal Framework

To qualify for disability benefits under Title II, the Commissioner must find that the applicant has a "disability" as defined in the Act. *See* 20 C.F.R. § 404.315. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The same definition of "disability" is used to determine eligibility for SSI benefits under Title XVI. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.905.

The Act and the Commissioner's regulations establish a five-step process for evaluating a claimant's disability. 20 C.F.R. §§ 404.1520, 416.920.

First, the claimant must not have engaged in "substantial gainful activity" since the onset of the impairment. Sec-

ond, the claimant must show that she has a severe impairment, that is, one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Third, if the impairment is severe, the Commissioner must determine whether the impairment meets or equals a listed impairment in Appendix 1 [to Subpart P of 20 C.F.R. Part 404], which leads to a conclusive presumption of disability and ends the inquiry.

If the impairment is not one that the SSA presumes to be disabling, however, then the evaluation continues to a fourth step. At this stage, the Commissioner determines whether the claimant is incapable of performing work that she has done in the past. If incapable of the past work, then at the fifth step, the Commissioner must determine the claimant's RFC [residual functional capacity] to see if she can perform other work that exists in substantial numbers in the national economy.

*Jackson,* 271 F.Supp.2d at 34 (internal citations to 20 C.F.R. §§ 404.1520 and 416.920 omitted).

■ The claimant bears the burden of proof during the first four steps. However, once a claimant has established his inability to perform his previous work, the burden of proof shifts to the Commissioner to show that the individual, based upon his or her age, education, work experience, and residual functional capacity, is capable of performing gainful work that exists in the national economy. *See Brown v. Bowen,* 794 F.2d at 706; *Stankiewicz v. Sullivan,* 901 F.2d 131 (D.C.Cir.1990).

## C. The Commissioner's Decision

In this case, the Commissioner, through the ALJ, applied the five-step analysis and determined, first, that Mr. Brown had not engaged in substantial gainful activity since the date of his injury. *See* A.R. at 16. Second, the ALJ found that Brown had "severe impairments" within the meaning of the Regulations. *See id.* At step 3, the ALJ found that Plaintiff's impairment, while severe, was not listed in Appendix 1, nor was it "medically equal" to any of the listed impairments that are presumptively disabling. *See id.* The ALJ next found that Mr. Brown "cannot perform his past work," but determined that he did retain a "residual functional capacity for sedentary work." *See id.* at 17.

At this point, the burden of proof shifted to the Commissioner to show that Mr. Brown could perform other work in the economy. *See* 20 C.F.R. § 404.1520(f). For the purposes of disability benefits under Title II, the Commissioner had to consider Mr. Brown's status on or before the date he was last eligible for disability insurance benefits—December 31, 1996. Based on Brown's age at that time (46), and the testimony of a vocational expert, the ALJ determined that he could have performed work that existed in the national economy. *See* A.R. at 17. Thus, the ALJ found that Brown "was not under a disability on or before his date last insured of December 31, 1996, and that he is not entitled to disability insurance benefits." *Id.* at 16.[1]

Plaintiff contends that the ALJ made several errors in his analysis and requests

---

1. For the purposes of SSI benefits under Title XVI, however, the relevant date was the filing date of Mr. Brown's application—September 21, 2001. Since Mr. Brown had reached age 50 in July 2000, the ALJ noted that Appendix 2 to Subpart P of Part 404 of the regulations directed a different conclusion as to disability.

*See* A.R. at 16. Accordingly, the ALJ decided that Mr. Brown had been disabled at all times since the filing of his application for supplemental security income and was therefore provisionally eligible for SSI benefits. *See id.* at 18.

the Court to reverse the decision regarding Mr. Brown's entitlement to disability insurance benefits. First, Plaintiff argues that the ALJ applied an outdated Listing of Impairments when determining whether or not Mr. Brown was entitled to a presumption of disability. *See* Pl's. Mot. at 6. Second, that the ALJ erred in finding that Mr. Brown did not meet the standards of the applicable listed impairment. *See id.* at 7. Third, that the ALJ erred in assessing Mr. Brown's residual functional capacity by failing to consider the side effects of his treatment and by failing to consider the extent of his chronic pain and other non-exertional limitations. *See id.* at 15–20. Next, that the Commissioner failed to carry its burden of proof that there were jobs in the national economy that were available at the date of Plaintiff's impairment. *See id.* at 20. Finally, that Defendant mischaracterized the treating physician's statements that Mr. Brown was "capable of performing sedentary or light work." *See id.* at 22.

Because Plaintiff's first point asserts an error of law, the Court will consider it before deciding whether to review the ALJ's factual findings regarding Brown's disability.

### D. The ALJ Erred in Applying the List of Impairments in Appendix 1

Appendix 1 to Subpart B of 20 C.F.R. Part 404 describes, for each of the major body systems, "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. If a claimant has an impairment that meets or equals one of the listings in Appendix 1, the Commissioner will find that they are "disabled" without having to evaluate the claimant's "residual functional capacity" and ability to find other work in the economy. *See id.* at § 404.1520(d).

From time to time, the Commissioner revises the criteria in the Appendix 1 to "reflect advances in medical knowledge, treatment, and methods of evaluating . . . impairments." *See, e.g.,* 66 Fed.Reg. 58010 (Nov. 19, 2001). These revisions "help to ensure that determinations and decisions regarding disability have a sound medical basis, that claimants receive equal treatment through the use of specific criteria, and that people who are disabled can be readily identified and awarded benefits . . . ." *Id.*

At Step 3 of the SSA's sequential evaluation process, the Commissioner evaluates the record evidence to determine whether or not claimants have an impairment that "meets or equals" one of the listings in Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4). In this case, the ALJ concluded that "the evidence does not show that claimant's impairments are of a severity to meet or equal any of the listings contained at Appendix 1 . . . ." A.R. at 14. In arriving at this conclusion, the ALJ presumably applied the criteria in former Listing 1.05(C), which covered "disorders of the spine associated with vertebrogenic disorders." *See* Def's. Mot. at 17 ("the listing of impairments that most closely approximates plaintiff's medical problems is Listing 1.05[C]"). However, effective February 19, 2002, three days prior to the ALJ's ruling, the Commissioner revised the Listing of Impairments used to evaluate musculoskeletal impairments and replaced Listing 1.05(C) with new Listing 1.04, which covers three separate sets of criteria for common disorders of the spine: nerve root compression (final listing 1.04A), spinal arachnoiditis (final listing 1.04B), and lumbar spinal stenosis resulting in pseudoclaudication (final listing 1.04C). *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010 (Nov. 19, 2001).

Plaintiff argues that the ALJ "committed a reversible error of law" by relying on the old list of impairments to support a final decision that issued after the effective date of the revised listings. *See* Pl's. Mot. at 6. Plaintiff further contends that Mr. Brown is entitled to a presumption of disability because he "has met or exceeded [new] Listed Impairment 1.04C since well prior to December 31, 1996, his last insured date, and continues to meet or exceed this listing." *Id.* at 7–8.

Defendant responds that the ALJ properly relied on the original listings because "new listings only apply to applications filed *after* the effective date ... and it is undisputed that Plaintiff's application was filed long before that date." Def's. Resp. at 2 (citing 66 Fed.Reg. at 58011) (emphasis in original). In any event, Defendant also disputes whether Mr. Brown would have qualified as disabled even if the ALJ were to apply the criteria in the new listings. *See id.*

 Although the Court expresses no opinion as to whether Mr. Brown satisfies the criteria in either the original or the revised Appendix 1, it nevertheless agrees with Plaintiff that the ALJ should have applied the revised list, and that his failure to do so constitutes reversible error. The Court disagrees with Defendant's characterization of the SSA's explanation of the effective date of the new listings. Defendant cited one sentence from the Federal Register notice accompanying the final rules to support the position that the revised listings only apply to applications filed *after* their effective date. *See* Def's. Mot. at 2. However, Defendant failed to consider the SSA's clarifying language on the same page that stated

> [a]s is our usual practice when we make changes to our regulations, we will apply these final rules to the claims of applicants for benefits that are *pending at any stage of our administrative review*

*process* ... With respect to claims in which we have made a final decision, and that are pending judicial review in federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.

66 Fed.Reg. at 58011 (emphasis added).

The revised listings took effect on February 19, 2002. There is no question that Mr. Brown's claim was still "pending" in the "administrative review process" at least until the ALJ issued his final decision on February 22, 2002. *See* 20 C.F.R. § 404.900(a) (explaining that the "administrative review process" consists of several steps, including (1) initial determination; (2) reconsideration; (3) hearing before an administrative law judge; and (4) Appeals Council review); *see also id.* at § 404.900(a)(5) ("When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision."). Therefore, according to the SSA's own standards, the ALJ's decision should have been made in accordance with the newly promulgated listings.

Mr. Brown is entitled to a full and fair hearing by the SSA. The ALJ's failure to apply the current version of Appendix 1 deprived Mr. Brown of the opportunity to prove that his condition "meets or equals a listed impairment" as provided for in Step Three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520. It is imperative to a fair hearing that the Commissioner consider the evidence presented by Mr. Brown in light of the correct legal standards. Therefore, the Court has no choice but to vacate the decision of the Commissioner and remand for full consideration of the evidence in this case and an explicit explanation as to whether Plaintiff's condition meets the criteria in the new Listed

Impairment 1.04(C). *See Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) ("Where evidence has not been properly evaluated because of an erroneous view of the law ... the determination of the [Commissioner] will not be upheld."); *see also Jackson,* 271 F.Supp.2d at 36 (remanding to "allow the ALJ to reweigh the evidence" because "the ALJ's decision leaves unanswered the question of exactly what legal standard he applied").

Plaintiff asserts that the "Court should not remand the case," but rather should, on its own, apply the proper listing and adjudicate Mr. Brown's claim. *See* Pl's. Mot. at 7. The Court notes that it is empowered by 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency, "with or without remanding the cause for a rehearing." *See Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Ordinarily, however, it is the role of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. *See Martin v. Apfel,* 118 F.Supp.2d 9, 13 (D.D.C.2000). Therefore, the Court is persuaded that in this case the Commissioner should be given the first chance to evaluate the evidence using the correct listing of impairments.

Furthermore, because the Commissioner's determination was tainted at Step Three of the SSA's sequential evaluation process, it would be premature for the Court to consider Plaintiff's objections to the Commissioner's decisions at Steps Four and Five, *i.e.* that the ALJ improperly determined Mr. Brown's residual functional capacity and failed to carry its burden of proof that there were jobs available for Mr. Brown in the national economy. On remand, the Commissioner may find that Mr. Brown's condition satisfies the new categorical listings in Appendix 1, and that will be the end of the issue. Should the Commissioner find that Mr. Brown still does not qualify for a presumption of

disability, he is under an obligation to fully explain the reasons or basis for the decision. *See Martin,* 118 F.Supp.2d at 13 ("A reviewing court should not be left guessing as to how the ALJ evaluated probative evidence."); *see also Schoofield v. Barnhart,* 220 F.Supp.2d 512, 522 (D.Md.2002) (when an ALJ "fails to properly identify the [Listed Impairment] considered at Step Three, and to explain clearly the medical evidence of record supporting the conclusion reached at that critical stage of analysis, a remand can be expected to result"). This course of action will provide the reviewing court with the benefit of a fully developed record with which to evaluate the ALJ's eventual determination.

## IV. Conclusion

Because the Court finds that the ALJ did not properly apply the revised List of Impairments at Appendix 1 of the Regulations, and therefore did not adequately evaluate claimant's evidence at Step 3 of the SSA's sequential evaluation process, it is by the Court hereby

**ORDERED** that Plaintiff's Motion for Judgment of Reversal is **GRANTED IN PART AND DENIED IN PART** and that Commissioner's Motion for Judgment of Affirmance is **DENIED**; and it is

**FURTHER ORDERED** that the Commissioner's final decision denying Mr. Brown disability insurance benefits is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

A separate Order and Judgment accompanies this Memorandum Opinion.